## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| SONIC AUTOMOTIVE, INC.<br>6415 Idlewild Road, Suite 109<br>Charlotte, North Carolina 28212,<br><br>     Plaintiff,<br><br>     v.<br><br>CHRYSLER INSURANCE COMPANY<br>27777 Inkster Road<br>Farmington Hills, Michigan 48334,<br><br>     and<br><br>GREAT AMERICAN ASSURANCE<br>COMPANY<br>580 Walnut Street<br>Cincinnati, Ohio 45201-2575,<br><br>     and<br><br>LUMBERMENS MUTUAL CASUALTY<br>COMPANY, D/B/A LUMBERMENS<br>MUTUAL GROUP<br>1 Kemper Drive<br>Long Grove, Illinois 60049-00001,<br><br>     and<br><br>UNIVERSAL UNDERWRITERS<br>INSURANCE COMPANY<br>7045 College Boulevard<br>Overland Park, Kansas 66211,<br><br>     Defendants. | **Jury Trial Demanded** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES

Plaintiff Sonic Automotive, Inc. ("Sonic") brings this Complaint for Declaratory and Injunctive Relief and for Damages against Defendants Chrysler Insurance Company, formerly known as DaimlerChrysler Insurance Company ("Chrysler Insurance"), Great American Assurance Company ("Great American"), Lumbermens Mutual Casualty Company, d/b/a Lumbermens Mutual Group ("Lumbermens"), and Universal Underwriters Insurance Company ("Universal").  Sonic seeks a declaration that several underlying class proceedings filed against it, which assert certain consumer protection claims premised on alleged violations of federal and state truth-in-lending statutes, fall within the scope of coverage provided by certain insurance policies that Chrysler Insurance, Great American, Lumbermens, and Universal issued to Sonic. In addition, Sonic seeks damages against Chrysler Insurance for breach of contract, bad faith, and unfair and deceptive trade practices stemming from Chrysler Insurance's failure to honor its duty to defend (including its duty to pay Sonic's independent defense counsel), and its wrongful efforts to mischaracterize and limit the coverage available under its policies.  Sonic also seeks damages against Universal for breach of contract.  As a result of Chrysler Insurance's and Universal's actions, Sonic has paid almost $8 million in defense costs and expenses that otherwise should have been borne by those insurers, in addition to suffering other harm.  Sonic further seeks damages against Great American for its evasive and unfair and deceptive trade practices in failing to acknowledge that such underlying class proceedings are covered under the umbrella policy that it issued to Sonic, forcing Sonic to pursue litigation to obtain coverage and pay costs and expenses that it should not have borne.  In support thereof, Sonic alleges as follows:

## THE PARTIES

1.      Sonic is a business entity organized and existing under the laws of the State of Delaware with its principal place of business in Charlotte, North Carolina.

2.      Chrysler Insurance is an insurance company organized and existing under the laws of the State of Michigan with its principal place of business in Farmington Hills, Michigan.

3.      Great American is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

4.      Lumbermens is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business in Long Grove, Illinois.

5.      Universal is an insurance company organized and existing under the laws of the State of Kansas with its principal place of business in Overland Park, Kansas.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over the claims for relief of this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and each Defendant, and the amount in controversy exceeds $75,000.00, exclusive of costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred and are occurring within this judicial district.

8.      This action seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question in actual controversy between the parties.

9.     There exists a real, substantial, and justiciable issue in controversy between the parties with respect to the existence of insurance coverage available to Sonic for the underlying claims asserted against it, described below, and for certain amounts that it has incurred and may incur in the future.

10.     A judicial determination and a declaration of the rights and responsibilities of the parties is necessary and appropriate at this time because Sonic has no other adequate remedy that will resolve the current controversy.

## FACTUAL ALLEGATIONS

11.     Sonic owns a nationwide network of automobile dealerships that sell and lease new and used automobiles, including several dealerships in the Southern District of Ohio. Sonic also offers financing for the sale of vehicles purchased through its dealerships.

**A.     The Underlying Suits**

12.     Sonic has been named as a defendant in at least three lawsuits concerning the sale of a product known as "Etch" (the "Underlying Suits"). Etch is a theft-deterrent product sold to purchasers and lessees of automobiles consisting of an identifying number that is acid-etched into an automobile's windows. Etch was provided by the Automobile Protection Corporation ("APCO") and sold to consumers by the Sonic dealerships. Etch was backed with a warranty that paid such consumers up to $2,500 in the event the product failed to deter theft.

13.     A substantial proportion of Sonic's nationwide sales of Etch came from Sonic dealerships located in Ohio. Sonic currently estimates that approximately 15% of all Etch products sold by Sonic dealerships during the coverage periods at issue in the insurance policies identified in this action were sold in Ohio.

**The Galura Suit**

14.     On September 5, 2002, Virginia Galura, several other plaintiffs (the "Galura Plaintiffs"), and other individuals filed a putative class action styled Virginia Galura et al. v. Sonic Automotive, Inc., Case No. 02-006981C0-041, in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida. The case was dismissed voluntarily on November 6, 2002, and re-filed as set forth in the next paragraph.

15.     On December 30, 2002, the Galura Plaintiffs, again with other individuals, filed a putative class action styled Virginia Galura et al. v. Sonic Automotive, Inc., Case No. 02-12274 – Div. B, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Galura Suit").

16.     On April 16, 2003, the Galura Plaintiffs filed a First Amended Complaint and Demand for Jury Trial (the "Galura Complaint"). A copy of the Galura Complaint is attached at Exhibit A.

17.     In the Galura Complaint, the Galura Plaintiffs allege, inter alia, that certain Sonic dealerships, through which the Galura Plaintiffs had purchased their respective vehicles, failed to disclose the price of Etch on their vehicle (and the class') installment agreements and failed to disclose that Etch purportedly was "packed" or "stuffed" (i.e., hidden) into the amount financed. See, e.g., Ex. A ¶¶ 1, 45, 47-50, 56, 58, 62, 64, 67, & 68. This practice, the Galura Plaintiffs allege, caused their interest rates to be higher than they otherwise would have been. See, e.g., id. ¶¶ 70 & 105. The Galura Plaintiffs also allege, inter alia, that Sonic failed to disclose to the lender that the financing amount included Etch and that it was not normally eligible for financing. See, e.g., id. ¶¶ 42 & 69.

18.     The Galura Plaintiffs plead one count under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which they premise on alleged civil violations of federal and Florida truth-in-lending / truth-in-leasing statutes.     See Ex. A ¶¶ 99-101, & 108.     In Paragraph 108, the Galura Plaintiffs specifically allege,

> [The] SONIC practices set forth herein violate [Florida Statutes ("F.S.")] section 501.204 [the FDUTPA] as illegal, unfair or deceptive acts or practices in the conduct of any trade or commerce because they are inherently deceptive, they violate rules and rulings under the Federal Trade Commission Act, 15 U.S.C. sections 41, et seq., and they violate the Federal Truth-in-Lending Act, 15 U.S.C. section 1640(e) [("TILA")] and Florida Statutes Chapters 520 and 521 [respectively, the Florida Motor Vehicle Retail Sales Finance Act (including the Retail Installment Sales Act) and the Florida Motor Vehicle Lease Disclosure Act].

Ex. A ¶ 108.

19.     The Galura Plaintiffs allege that their respective vehicle purchases occurred during June 2000. Ex. A. ¶¶ 37, 53, 59, & 65.

20.     On June 3, 2005, the Hillsborough County Circuit Court certified a Florida-based class of "all customers who, on or after December 30, 1998, purchased or leased from a Sonic dealership in the State of Florida a vehicle that included an APCO etch product as part of the transaction."  The Florida Second District Court of Appeal upheld the class certification but required the exclusion of individuals who had received a refund for their Etch purchase or who had purchased Etch on or after April 23, 2002.

21.     On November 6, 2009, the Galura Plaintiffs moved for partial summary contending that Sonic's alleged violations of the Florida Motor Vehicle Retail Sales Finance Act constituted a per se violation of FDUTPA.  A copy of the Plaintiffs' Undisputed Facts and Memorandum of Law In Support of the Motion for Partial Summary Judgment for Per Se

Violations of FDUTPA is attached hereto as Exhibit B. As of the date of this Complaint, this motion for partial summary judgment is unresolved.

22.     The Galura Suit remains pending. Trial currently is scheduled for March 2011.

23.     The law firm of Williams & Connolly LLP ("Williams & Connolly") has been defending Sonic in the Galura Suit, with Charles G. Geitner, formerly of the law firm of Broad & Cassel and now with the law firm of Hinshaw & Culbertson LLP, serving as local counsel.

**The Owens Suit**

24.     On November 15, 2004, Misty Owens and several other plaintiffs (the "Owens Plaintiffs") filed a putative class action against Sonic, APCO, and certain South Carolina Sonic dealerships styled Misty Owens et al. v. Automobile Protection Corporation et al., Civil Suit No. 04-CP46-2997, in the Court of Common Pleas for York County, South Carolina (the "Owens Suit").

25.     After the York County Court of Common Pleas entered a Consent Order staying the suit and requiring the parties to proceed in arbitration, the Owens Plaintiffs, on April 4, 2005, filed a Class Arbitration Demand against Sonic, APCO, and the same Sonic dealerships styled Misty Owens et al. v. Automobile Protection Corporation et al., Case No. 30 459 00642 05, before the American Arbitration Association ("AAA") (the "Owens Arbitration"). The Owens Arbitration eventually was consolidated with the Price Arbitration, as described below.

**The Price Suit**

26.     On February 14, 2005, Robert Price, Carolyn Price, and several other plaintiffs (the "Price Plaintiffs") filed a putative class action against Sonic, APCO, and certain South Carolina Sonic dealerships styled Robert Price et al. v. Automobile Protection Corporation et al.,

Case No. 05-CVS-00157, in the General Court of Justice, Superior Court Division, of Lincoln County, North Carolina (the "Price Suit").

27.     After the Lincoln County Superior Court entered a Consent Order staying the suit and requiring the parties to proceed in arbitration, the Price Plaintiffs, on May 16, 2005, filed a Class Arbitration Demand against Sonic, APCO, and the same Sonic South Carolina dealerships styled Robert Price et al. v. Automobile Protection Corporation et al., Case No. 11 188 01140 05, before the AAA (the "Price Arbitration").

### The Consolidated Owens/Price Arbitration

28.     On October 14, 2005, the Owens Plaintiffs and the Price Plaintiffs (collectively, the "Owens/Price Claimants") filed a Consolidated and Amended Class Arbitration Demand (the "Owens/Price Demand") against Sonic and others styled Misty Owens et al. v. Automobile Protection Corporation et al., Consolidated Case No. 30 459 00642 05, before the AAA (the "Owens/Price Arbitration"). A copy of the Owens/Price Demand is attached hereto as Exhibit C.

29.     The Owens/Price Claimants are pursuing allegations and claims much like those of the Galura Plaintiffs. See, e.g., Ex. C ¶¶ 3, 75, 87-88, 90-92, 94-96, 98-100, 104-06, 111, 116(A), 131(F), & 133. The Owens/Price Claimants also allege, inter alia, that the Sonic dealerships told the purchasers and lessees that they had to purchase Etch in order to obtain financing. See id. ¶¶ 81-83, 86, 103, 109, 116(C), 116(D), & 131(I).

30.     The Owens/Price Claimants plead five counts against Sonic:  violations of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act, S.C. Code Ann. § 56-15-10 et seq. (the "SC Dealer Act") (Count I); rescission (Count II); breach of contract (Count III); unjust enrichment (Count IV); and violations of the North Carolina Unfair and

Deceptive Trade Practices Act ("NCUDTPA") (Count V).  See Ex. C at ¶¶ 6 & 124-63; see also id. at ¶ 116(F).  Count II has since been dismissed by the arbitrator.

31.    The Owens/Price Claimants allege that their respective vehicle purchases and leases occurred between June 2001 through February 2003. Ex. C ¶¶ 84, 89, 93, 97, 101, & 107.

32.    The Owens/Price Claimants also assert allegations regarding negligent conduct, including but not limited to allegations that "Sonic failed to properly monitor, control, and audit its local dealers as to [improper packing and stuffing practices]," Ex. C ¶ 38; and that the Sonic dealerships' "representations regarding Etch" were "grossly negligent," id. ¶ 130.

33.    On July 19, 2010, the arbitrator in the Owens/Price Arbitration entered a Partial Final Award on Class Certification ("the Partial Final Award").  A copy of the Partial Final Award is attached hereto as Exhibit D.  The Partial Final Award conditionally certifies a nationwide class for "[a]ll customers who, on or after November 15, 2000, purchased or leased from a Sonic dealership a vehicle with the Etch product as part of the transaction but not including customers who purchased or leased such vehicles from Sonic dealership [sic] in Florida." Ex. D at 10.

34.    In the Partial Final Award, the arbitrator explained that "[a]s the arbitration has developed, the Claimants allege . . . "(l) that Respondents violated the Truth in Lending Act." See id. at 4.

35.    The Owens/Price Arbitration remains pending.  On July 22, 2010, the Price Plaintiffs moved to confirm the Partial Final Award in the Price Suit before the Lincoln County Superior Court.  On August 17, 2010, Sonic removed the Price Suit to the United States District Court for the Western District of North Carolina, Statesville Division, styled Robert Price et al. v. Automobile Protection Corporation et al., Case No. 5:10-cv-00112-RLV-DSC.  The same day,

Sonic also petitioned the United States District Court for the Western District of North Carolina, Charlotte Division, to vacate the Partial Final Award in a case styled <u>Sonic Automotive, Inc. v. Robert Price et al.</u>, Case No. 3:10-cv-00382-RLV-DSC.

36.     The law firm of Williams & Connolly has been defending Sonic in the <u>Owens/Price</u> Suits and the <u>Owens/Price</u> Arbitration, with William K. Diehl of the law firm of James, McElroy & Diehl, P.A., serving as local counsel.

**B.      The Insurance Policies At Issue**

**The Chrysler Insurance Garage Coverage Policies**

37.     In exchange for premiums paid by Sonic, Chrysler Insurance issued to Sonic at least three separate liability policies, which are known as "garage coverage policies" and are tailored to automotive sales businesses, with the same policy number, Policy No. CPP006000, effective for the period starting no later than December 1, 1999, through January 1, 2003 (collectively, "the Chrysler Insurance Garage Coverage Policies"). A true and correct copy of each Chrysler Insurance Garage Coverage Policy currently possessed by Sonic is attached hereto as Exhibits E, F, and G. An excerpt of the 1999 Chrysler Insurance Garage Coverage Policy is attached hereto as Exhibit H. Each Chrysler Insurance Garage Coverage Policy currently possessed by Sonic spanned December 1 of one year (e.g., 1999) through December 1 of the following year, except the policy beginning December 1, 2001, was extended by endorsement to January 1, 2003. <u>See</u> Ex. E at 1; Ex. F at 1; and Ex. G at 1-2.

38.     Upon information and belief, Chrysler Insurance also issued to Sonic an insurance policy No. CPP4265, effective for the period of April 1, 1999, through December 10, 1999 (the "Chrysler CPP4265 Policy"). Upon information and belief, the Chrysler CPP4265 Policy

provides coverage substantially similar to the coverage provided by the Chrysler Insurance Garage Coverage Policies.

39.     Each of the Chrysler Insurance Garage Coverage Policies contains an Auto Dealer Enhancement Package endorsement, which in relevant part provides the following relevant coverage to Sonic:

> Part I. – WE WILL PAY:
>
> Section II – Liability Coverage is extended to include coverage for all sums an "insured" legally must pay as "damages" arising from an "occurrence" because of an alleged or actual negligent act or "error or omission" by an "insured" occurring during the policy period of this policy and resulting from:
>
> . . .
>
> Coverage E.     Truth-in-Lending, Truth-in-Leasing Errors and Omissions – a civil violation of any federal, state, or local statute that regulates specific disclosures required to complete:
>
> 1. Consumer financing agreements.
> 2. Consumer leasing agreements.

See, e.g., Ex. H at 1, Auto Dealer Enhancement Package Endorsement.

40.     Under the Limit of Insurance for the Auto Dealer Enhancement Package, the

> most [Chrysler Insurance] will pay for "damages" resulting from an "occurrence" under this endorsement during this policy period is $1,000,000 for any one "claim" and/or "suit".     The most we will pay for "damages" under this endorsement in aggregate for all "claims" and/or "suits" occurring during this policy period is $2,000,000.

See, e.g., id.

41.     The Auto Dealer Enhancement Package also provides that

> [Chrysler Insurance] ha[s] the right and duty to defend any "suit" asking for these "damages".     We may investigate and settle any "claim" and/or "suit", as we consider appropriate, even if the allegations of the "claim" and/or "suit" are groundless, false or fraudulent.     Our duty to defend or settle ends when the Limit of Insurance stated in this endorsement has been exhausted by payment of "claims" and/or "suits".

See, e.g., id.

42.    Any amounts paid by Chrysler Insurance to defend Sonic under the Auto Dealer Enhancement Package are separate from and in addition to the Limit of Insurance.  The Chrysler Insurance Garage Coverage Policies confirm that all expenses incurred with respect to the duty to defend are "[i]n addition to the Limit of Insurance." Ex. H at 6, § II.A.2.a.

43.    Sonic is entitled to defense counsel independent of that selected or designated by Chrysler Insurance.  Chrysler Insurance has certain interests in the Underlying Suits that are adverse to Sonic's interests.  For example, the Chrysler Insurance Garage Coverage Policies contain potentially coverage-defeating exclusions that could be triggered if defense counsel fails to defend Sonic zealously against certain allegations in the Underlying Suits.  Because Chrysler Insurance could profit from Sonic's defeat in the Underlying Suits, Sonic needs and is entitled to independent counsel paid for by Chrysler Insurance.

44.    As described herein and set forth in the record of the Underlying Suits, the types of claims and allegations in each of the Underlying Suits fall within the scope of coverage provided by Coverage E in each of the Chrysler Insurance Auto Dealer Enhancement Packages.

**The Great American Umbrella Policy**

45.    In exchange for premiums paid by Sonic, Great American issued an umbrella policy to Sonic, Policy No. UMB 5747393, effective for the period of December 1, 2001, through December 1, 2002 (the "Great American Umbrella Policy").  A true and correct copy of the Great American Umbrella Policy is attached hereto at Exhibit I.  The Great American Umbrella Policy was extended by endorsement to January 1, 2003.  See id. at 4.

46.    The Great American Umbrella Policy provides additional coverage for certain claims covered by the Chrysler Insurance Garage Coverage Policies.  The Great American

Umbrella Policy contains a "General Endorsement" for "Auto Dealer Enhancement Coverage" that "follow[s] form" to the Auto Dealer Enhancement Package of the underlying Garage Coverage Policy. Ex. I at 13. The Great American Umbrella Policy's Auto Dealer Enhancement Coverage confirms the relevant additional coverage under the Great American Umbrella Policy:

> The following exclusion is added to Section IV – Exclusions:
>
> 1.    Any liability for or arising out of:
>
> . . .
>
>> 3)    Truth-in-Lending, Truth-in-Leasing Errors and Omissions – a civil violation of any federal, state, or local statute that regulates specific disclosures required to complete:
>>
>>> A)    Consumer financing agreements.
>>> B)    Consumer leasing agreements.
>
> **except to the extent that such insurance is provided by a policy listed in the schedule of underlying insurance** for the full limits shown and for no broader coverage than is provided by such policy.

<u>Id.</u> (emphasis added).

47.    The Chrysler Insurance Garage Coverage Policy effective December 1, 2001, through January 1, 2003 (Policy No. CPP006000) is one of the policies identified in the Great American Umbrella Policy's Schedule of Underlying Insurance. <u>See</u> Ex. I at 10.

48.    The Limits of Insurance under the Great American Umbrella Policy are $25 million per occurrence and $25 million general aggregate. <u>See</u> Ex. I at 1.

49.    Because coverage under the Great American Umbrella Policy's Auto Dealer Enhancement Coverage follows form to the underlying Chrysler Insurance Garage Coverage Policy, the claims, allegations, and classes at issue in each of the Underlying Suits fall within the scope of coverage provided by the Great American Umbrella Policy's Great American Auto Dealer Enhancement Coverage.

50. Because coverage under the Great American Umbrella Policy's Auto Dealer Enhancement Coverage follows form to the underlying Chrysler Insurance Garage Coverage Policy, defense costs under the Auto Dealer Enhancement Coverage are separate from and in addition to the Limits of Insurance. In addition, the Great American Umbrella Policy also contains other provisions confirming that defense costs paid under the Great American Umbrella Policy are in addition to the limits of such policy.

**The Lumbermens Excess Policy**

51. In exchange for premiums paid by Sonic, Lumbermens issued a commercial excess liability policy to Sonic, Policy No. 3SR 130934-00, effective for the period of December 1, 2001, through December 1, 2002 (the "Lumbermens Excess Policy"). A true and correct copy of the Lumbermens Excess Policy is attached hereto at Exhibit J.

52. The Lumbermens Excess Policy grants the following relevant excess coverage to Sonic:

> We will pay on behalf of the **"Insured"** that part of **"Loss"** covered by this insurance in excess of the limits of liability of the **"Underlying Insurance"** as set forth in the Schedule of Underlying Insurance but only up to an amount not exceeding our Limits of Liability as set forth in Item 4. of the Declarations, provided the **"Insured Event"** takes place during our **"Policy Period."**

Ex. J at 6, § I.A.1 (emphasis in original).

53. Under the Lumbermens Excess Policy, "**'Underlying Insurance'** means the **'Designated Underlying Policy'** and any other policy or policies set forth in the Schedule of Underlying Insurance (including any renewal or replacement thereof)." Ex. J at 9, § IV.A.6. The Great American Umbrella Policy (Policy No. UMB 5747393) is the Underlying Insurance and Designated Underlying Policy identified in the Lumbermens Excess Policy's schedule of underlying insurance. See id. at 13 (emphasis in original).

54.     Under the Lumbermens Excess Policy, an "'**Insured Event**' means accidents, occurrences, or offenses, whichever is applicable, under the '**Designated Underlying Policy.**'" Ex. J at 9, § IV.A.2 (emphasis in original).

55.     The Limits of Insurance under the Great American Umbrella Policy are $25 million per occurrence and $25 million general aggregate.

**The Universal Policies**

56.     In exchange for premiums paid by Sonic, Universal issued two primary policies to Sonic, Policy No. GKLL 249774, effective for the period of January 1, 2003, to January 1, 2004 (the "Universal 2003 Policy") and Policy No. GKLL 249774A, effective for the period of January 1, 2004 to January 1, 2005 (the "Universal 2004 Policy") (collectively, the "Universal Policies"). A true and correct copy of the Universal 2003 Policy is attached hereto at Exhibit K. A true and correct copy of the Universal 2004 Policy is attached hereto at Exhibit L. An excerpt of the Universal 2003 Policy is attached hereto at Exhibit M.

57.     Each of the Universal Policies contains a Part 500, which in relevant part provides the following relevant coverage to Sonic:

> [Universal] will pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of STATUTE AND TITLE E&O where such insurance is included in the declarations.
>
> . . .
>
> "STATUTE AND TITLE E&O" means any claim or SUIT filed against YOU, other than as a result of an OCCURRENCE or CUSTOMER COMPLAINT DEFENSE, by or on behalf of:
>
> (a) a customer arising out of GARAGE OPERATIONS, because of an alleged violation during the Coverage Part period, of any federal, state or local
>
> . . .
>
>   (2) truth-in-lending or truth-in-leasing law.

See, e.g., Ex. M at 14 and 16.

58.     The limits of insurance under Part 500 of the Universal Policies are $500,000 per suit and $500,000 annual aggregate.

59.     Part 500 also provides that

[Universal] ha[s] the right and duty to defend any SUIT asking for these DAMAGES.    [Universal] may investigate and settle any claim or SUIT [Universal] consider[s] appropriate.  [Universal's] payment of the limit shown in the declarations ends [Universal's] duty to defend.

See, e.g., Ex. M at 14.

60.     Defense costs under Part 500 of the Universal Policies are separate from and in addition to the limits of insurance.  Part 500 provides that the annual aggregate limit applies to "DAMAGES," which "means amounts awardable by a court of law."  See, e.g., Ex. M at 15.

61.     Each of the Universal Policies also contains a Part 980, which in relevant part provides the following relevant umbrella coverage to Sonic:

[Universal] will pay for LOSS, subject to the terms and conditions of this Coverage Part, in excess of:

(a) coverage provided in any UNDERLYING INSURANCE.

See, e.g., Ex. M, Universal 2003 Package at 24.    The phrase "UNDERLYING INSURANCE" includes Part 500.

62.     The limits of insurance under Part 980 of the Universal Policies are $1,000,000 per occurrence, with no annual aggregate.

63.     The Declarations Pages concerning Part 980 in each of the Universal Policies provide that "STATUTE AND TITLE E&O IS INCLUDED UNDER [the] UMBRELLA" coverage, see, e.g., Ex. M at 9, thereby expressly incorporating in Part 980 the Statute and Title

E&O coverage set forth in the primary coverage layer provided by Part 500 of each of the Universal Policies.

64.    Universal has a duty to defend Sonic under Part 980 of each of the Universal Policies.

65.    Any amounts paid by Universal to defend Sonic under Part 980 of each of the Universal Policies are separate from and in addition to the limit of insurance.

66.    Sonic is entitled to defense counsel independent of that selected or designated by Universal. Universal has certain interests in the Owens/Price Suits that are adverse to Sonic's interests. For example, the Universal Policies contain potentially coverage-defeating exclusions that could be triggered if defense counsel fails to defend Sonic zealously against certain allegations in the Owens/Price Suits. Because Universal could profit from Sonic's defeat in the Owens/Price Suits, Sonic needs and is entitled to independent counsel paid for by Universal Insurance.

67.    As described herein and set forth in the record of the Owens/Price Suits, the types of claims and allegations in each of the Owens/Price Suits fall within the scope of coverage provided by Part 500 and Part 980 in each of the Universal Policies.

C.    **Pertinent Claims History with Chrysler Insurance**

68.    Sonic properly tendered notice of the Underlying Suits to Chrysler Insurance.

**The Galura Suit**

69.    Upon notice of the Galura Suit in October 2002, Chrysler Insurance initially recognized coverage of Sonic and the named dealerships under Coverage E of the Auto Dealer Enhancement Package. In a letter from Chrysler Insurance's Claims Examiner, James Smith, dated November 5, 2002, attached hereto as Exhibit N, Chrysler Insurance acknowledged that

"[c]overage for the losses [in the Galura Suit] is provided under the Garage Coverage Form, Auto Dealer Enhancement Package, endorsed to Policy CPP006000." Ex. N at 1. Chrysler Insurance also initially agreed it would pay for the defense costs for Sonic and the other parties. Id. at 3.

70. After Sonic provided Chrysler Insurance notice of the re-filed Galura Suit, Chrysler Insurance again recognized coverage of Sonic and the named dealerships under Coverage E. In a letter from Mr. Smith dated March 24, 2003, attached hereto as Exhibit O, Chrysler Insurance admitted that claims under state deceptive and unfair trade practice acts premised on alleged violations of federal and state truth-in-lending statutes fall within Coverage E:

> Plaintiffs allege only a Violation of the Florida Deceptive and Unfair Trade Practices Act and Unjust Enrichment. Cited as examples of deceptive business practices are the violation of the Federal Truth-in-Lending Act and the Florida Motor Vehicle Retail Sales Finance Act, which triggers coverage under the Garage Coverage Form, Auto Dealer Enhancement Package, Endorsed to Policy CPP006000.

Ex. O at 1. Chrysler Insurance again agreed to pay Sonic's defense costs. Id. at 3.

71. After the Galura Plaintiffs filed their Amended Complaint, Chrysler Insurance recognized coverage under Coverage E a third time. In a letter from Mr. Smith dated May 13, 2004, attached hereto as Exhibit P, Chrysler Insurance again admitted that claims under state deceptive and unfair trade practice acts premised on alleged violations of federal and state truth-in-lending statutes fall within Coverage E:

> Plaintiffs alleges a Violation of the Florida Deceptive and Unfair Trade Practices Act and the Motor Vehicle Sales Finance Act, triggering coverage for the loss under the Garage Coverage Form, Customer Complaint and Auto Dealer Enhancement Package, endorsed to Policy CPP006000.

Ex. P at 1.

72.     In that May 13, 2004 letter, Chrysler Insurance raised for the first time the potential application of another form of coverage under the Chrysler Insurance Garage Coverage Policies, the Customer Complaint Endorsement.  This endorsement, however, provides the insured significantly less coverage than that provided by the Auto Dealer Enhancement Package and is inapplicable to the Underlying Suits.  The Customer Complaint Endorsement provides limits of $25,000 per occurrence and $100,000 in the aggregate for all damages and defense costs.  In addition, the Customer Complaint Endorsement excludes, <u>inter alia</u>, "'[c]laims' and/or 'suits' due to your violation of . . . truth-in-lending or truth-in-leasing law."  <u>See</u> Ex. H (excerpt of Policy CPP06000) at 18.

73.     Despite repeatedly acknowledging the applicability of Coverage E, Chrysler Insurance changed its position regarding the applicability of Coverage E after the class was certified in the <u>Galura</u> Suit.  Coverage E has liability limits of $1 million for any one "'claim' and/or 'suit'" and $2 million in the aggregate for each policy period and defense costs in addition to limits.  In contrast, the Customer Complaint Endorsement caps coverage for damages and defense costs at $25,000 per occurrence and $100,000 in the aggregate.  In a letter from Mr. Smith dated July 21, 2005, attached hereto as Exhibit Q, Chrysler Insurance said that Coverage E would not apply to claims arising from the <u>Galura</u> Suit.  Instead, Chrysler Insurance said that "the only coverage that would apply falls under the Customer Complaint Endorsement, limited to $25,000 for any one claim and/or suit."  <u>See</u> Ex. Q at 1.

**The Owens/Price Suits**

74.     Chrysler Insurance also wrongfully attempted to mischaracterize coverage for claims arising from the <u>Owens/Price</u> Suits under the Customer Complaint Endorsement, even though the <u>Owens/Price</u> Suits contain very similar allegations and claims to those asserted in the

Galura Suit, and Chrysler Insurance repeatedly had acknowledged the applicability of Coverage E of the Auto Dealer Enhancement Package in the Galura Suit.

75. Upon notice of the Owens Suit in December 2004, Chrysler Insurance, in a letter from Mr. Smith dated December 6, 2004, attached hereto as Exhibit R, wrote, "[b]ased on the allegations, coverage is provided under the Garage Coverage Form Customer Complaint Endorsement attached to Policy CPP006000." Ex. R at 2. Chrysler Insurance did not mention the potential applicability of Coverage E. Chrysler Insurance agreed to pay for Sonic's defense costs. Id.

76. Upon notice of the Price Suit in March 2005, Chrysler Insurance, in a letter from Mr. Smith dated March 8, 2005, attached hereto as Exhibit S, explained that "[b]ased on the allegations, coverage is provided under the Garage Coverage Form Customer Complaint Endorsement attached to Policy CPP006000." Ex. S at 1. Chrysler Insurance further acknowledged that "[t]his case mirrors the Owens matters filed in South Carolina and alleges violations of the [NCUDTPA] for the sale of the 'ETCH' product." Chrysler Insurance did not mention the potential applicability of Coverage E. Chrysler Insurance again agreed to pay for Sonic's defense costs. Id.

77. In subsequent correspondence regarding the Owens/Price Suits, Chrysler Insurance continued to maintain that the Customer Complaint Endorsement potentially applied and did not mention Coverage E.

78. In June 2010, Sonic again contacted Chrysler Insurance by letter requesting, inter alia, that Chrysler Insurance reassess its position regarding Coverage E for the Underlying Suits. See Letter from T. Hallice dated June 7, 2010, attached hereto as Exhibit T. Chrysler Insurance responded by letter from Mr. Smith dated June 11, 2010, attached hereto as Exhibit U, requesting

additional documentation from the Underlying Suits and indicating it would consider re-addressing its coverage position. <u>See</u> Ex. U. In a letter dated July 9, 2010, attached hereto as Exhibit V, Sonic provided the requested information and specifically cited to pleadings and other materials in the record demonstrating why the Underlying Claims fell within Coverage E. <u>See</u> Ex. V. Chrysler Insurance subsequently responded by letter from Mr. Smith dated July 27, 2010, attached hereto as Exhibit W, asserting that no coverage was available under the Chrysler Insurance Garage Coverage Policies because the claims were excluded under the policies. <u>See</u> Ex. W.

79.    The types of claims and allegations at issue in the Underlying Suits fall within the scope of coverage provided by Coverage E of the Auto Dealer Enhancement Package under each of the Chrysler Insurance Garage Coverage Policies and the scope of coverage provided by any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

**D.    <u>Sonic's Retention of Williams & Connolly</u>**

80.    Prior to March 2003, Sonic retained the law firm of Williams & Connolly to undertake Sonic's defense of the <u>Galura</u> Suit. Sonic informed Chrysler Insurance of the retention of Williams & Connolly on March 24, 2003. However, in a letter from Mr. Smith dated April 24, 2003, attached hereto as Exhibit X, Chrysler Insurance, without explanation, refused to agree to pay for Williams & Connolly's representation of Sonic. Chrysler Insurance indicated it would pay only for local counsel:

> I previously agreed to accept your local counsel, Broad and Cassel, to provide the defense for Sonic. The assistance from any other firm is your option, but at your expense. I cannot accept any invoices from Williams & Connolly under your Policy with [Chrysler Insurance].

Ex. X at 1.

81.     After the <u>Owens</u> Suit was filed, Chrysler Insurance was notified that Sonic had retained Williams & Connolly, in conjunction with local counsel, to represent Sonic in that action.  However, in its December 6, 2004 letter (Ex. R), Chrysler Insurance did not reference Sonic's retention of Williams & Connolly; it only agreed to pay for local counsel.

82.     After the <u>Price</u> Suit was filed, Chrysler Insurance was notified that Sonic had retained Williams & Connolly, in conjunction with local counsel, to represent Sonic in that action.  However, in its March 8, 2005 letter (Ex. S), Chrysler Insurance did not reference Sonic's retention of Williams & Connolly; it only agreed to pay for local counsel.

83.     Notwithstanding the capabilities of local counsel, Sonic reasonably believed that retaining Williams & Connolly was necessary to provide Sonic with suitable and capable defenses of the Underlying Suits in view of the complexity of the Underlying Suits, the magnitude of potential damages, and Williams & Connolly's reputation and experience in defending similar claims.

84.     Because the only defense costs that Chrysler Insurance agreed to pay were those incurred for local counsel, Chrysler Insurance failed to provide Sonic with required defense resources for the Underlying Suits, in contravention of its duty to defend.

85.     Because of Chrysler Insurance's wrongful and unreasonable position regarding the application of Coverage E to the Underlying Suits and its refusal to provide Sonic with required defense costs for the Underlying Suits, Sonic has been forced to pay for the defense of the Underlying Claims on its own.  As a result, Sonic has incurred almost $8 million in defense costs and expenses for the Underlying Suits that otherwise should have been borne by Chrysler Insurance.

86.     Through its conduct, described above, Chrysler Insurance has acted in continuing violation of the Chrysler Insurance Garage Coverage Policies.

**E.      Pertinent Claims History with Great American**

87.     Sonic properly tendered notice of the Underlying Suits to Great American.

88.     Following notice of the <u>Owens</u> Suit, Great American acknowledged in a letter from Ms. Camella Pratt dated December 29, 2004, attached hereto as Exhibit Y, that the Great American Umbrella Policy followed form to the Auto Dealer Enhancement Package contained in the underlying Garage Coverage Policy:

> Our captioned policy provides $25M coverage limits, specifically, and only, scheduled over the Garage Liability policy issued by [Chrysler Insurance], number CPP 006000 (12/1/02 – 02) . . . . Our captioned policy is "follow-form" to the [Chrysler Insurance] AUTO DEALER ENHANCEMENT PACKAGE Coverage A (Odometer Errors and Omissions), Coverage D (Title Errors and Omissions) and Coverage E (Truth-in Lending / Truth-in Leasing Errors and Omissions). Being "follow-form" to [Chrysler Insurance] means that if [Chrysler Insurance] has coverage for the loss then we do . . . .

Ex. Y at 1-2. However, although Great American acknowledged that the Great American Umbrella Policy followed form to Coverage E, it refused to admit (or deny) that the Underlying Suits would be covered by the Great American Umbrella Policy. <u>Id.</u> at 2.

89.     Great American took the same approach for the <u>Price</u> Suit. Following notice of the <u>Price</u> Suit, Great American in a letter from Ms. Pratt dated July 15, 2005, attached hereto as Exhibit Z, again acknowledged that the Great American Umbrella Policy followed form to the Auto Dealer Enhancement Package contained in the underlying Garage Coverage Policy:

> Our captioned policy is "follow-form" to the [Chrysler Insurance] AUTO DEALER ENHANCEMENT PACKAGE Coverage A (Odometer Errors and Omissions), Coverage D (Title Errors and Omissions) and Coverage E (Truth-in Lending / Truth-in Leasing Errors and Omissions). Being "follow-form" to [Chrysler Insurance] means that if [Chrysler Insurance] has coverage for the loss then we do . . . .

Ex. Z at 1. However, although Great American again acknowledged that its Umbrella Policy followed form to Coverage E, it refused to admit (or deny) that the Underlying Suits would be covered by the Great American Umbrella Policy. Id. at 2.

90.     Sonic continued to provide Great American with updates on the status of the Underlying Suits, including as recently as June 2010. In a response letter from Mr. Lawrence David dated June 17, 2010, attached hereto as Exhibit AA, Great American acknowledged receipt of the information but again merely indicated it was investigating whether coverage was available. See Ex AA at 1. Although Great American's previous correspondence expressly had admitted that the Great American Umbrella Policy followed form to the Auto Dealer Enhancement Package of the underlying Garage Coverage Policy, its June 17, 2010 letter avoided reference to the Great American Umbrella Policy's follow form endorsement. In addition, Great American again refused to admit (or deny) that the Underlying Suits would be covered by the Great American Umbrella Policy. Id.

91.     The types of claims and allegations at issue in the Underlying Suits fall within the scope of coverage provided by the Chrysler Insurance Garage Coverage Policy underlying the Great American Umbrella Policy and thus are covered by the Great American Umbrella Policy.

92.     Moreover, given the number of plaintiffs and the amount and types of damages alleged in the Underlying Suits, if the Galura Plaintiffs and the Owens/Price Claimants were to prevail on their claims and prove their alleged damages, Sonic's potential exposure likely would exceed the total Limit of Liability for the underlying Chrysler Insurance Garage Coverage Policy and trigger Great American's obligations under the Great American Umbrella Policy.

93.     Through its conduct, described above, Great American acted in continuing violation of the Great American Umbrella Policy.

**F.**     **Pertinent Claims History with Lumbermens**

94.     Sonic properly tendered notice of the Underlying Suits to Lumbermens.

95.     Following notice of the <u>Owens</u> Suit, Lumbermens failed to acknowledge coverage and refused to express a position on whether the Underlying Claims eventually would trigger coverage under the Lumbermens Excess Policy.

96.     Following notice of the <u>Price</u> Suit, Lumbermens failed to acknowledge coverage and refused to express a position on whether the Underlying Claims eventually could trigger coverage under the Lumbermens Excess Policy.

97.     In June 2010, Sonic provided Lumbermens with updates on the status of the Underlying Suits.  Lumbermens acknowledged receipt of the information but again refused to express a position on whether the Underlying Claims eventually could trigger coverage under the Lumbermens Excess Policy.

98.     Relevant acts alleged in the Underlying Suits and at issue in the classes certified thereunder took place during the period when the Lumbermens Excess Policy was in effect.

99.     Through its conduct, described above, Lumbermens acted in continuing violation of the Lumbermens Excess Policy.

**G.**     **Pertinent Claims History with Universal**

100.     Sonic properly tendered notice of the Underlying Suits to Universal.  In addition, after the <u>Owens</u> and <u>Price</u> Suits were filed, Universal was notified that Sonic had retained Williams & Connolly, in conjunction with local counsel, to represent Sonic in those actions.

101.     Like Chrysler Insurance, Universal attempted to mischaracterize its coverage obligations under the Universal Policies.  Following notice of the <u>Owens/Price</u> Suits, Universal failed to acknowledge coverage under the Statute and Title E&O provisions of its policies.  In a

letter from Universal's Litigation Specialist, Ron Johnson, dated February 28, 2005, attached hereto as Exhibit BB, Universal acknowledged receipt of the Price Suit but claimed coverage applied only under the "Customer Complaint Defense" provision of the Universal Policies. As defined in the Universal Policies, "CUSTOMER COMPLAINT DEFENSE means any SUIT filed against [Sonic] during the Coverage Part period by or on behalf of a customer arising out of the sale, lease, rental, service or repair of [Sonic's] PRODUCT, other than as a direct result of an OCCURRENCE or as defined in STATUTE AND TITLE E&O." See Ex. M at 15.

102.    The Customer Complaint Defense provision is limited to $25,000 in defense costs and provides no indemnity protection. Moreover, Universal's umbrella coverage (Part 980) does not apply to claims under the Customer Complaint Defense provision. And because the Customer Complaint Defense provision applies only to suits brought during the policy period, Universal told Sonic that no coverage was available for the Price Suit, even under the Customer Complaint Defense provision. See Ex. M at 15.

103.    The Universal Policies provide that "if more than one item of insurance in the same Coverage Part should insure a LOSS, INJURY, OCCURRENCE, claim or SUIT, the most [Universal] will pay is the highest limit applicable." See, e.g., Ex. M at 11. Universal improperly attempted to limit its obligations under the Universal Policies to the Customer Complaint Defense provision when it should have acknowledged coverage under the much higher limits available under the Statute and Title E&O and umbrella provisions.

104.    Upon information and belief, following notice of the Owens Suit, Universal also failed to acknowledge its coverage obligations under the Statute and Title E&O provisions of its policies.

105.    Relevant acts alleged in the <u>Owens/Price</u> Suits and at issue in the class certified thereunder took place during the period when the Universal Policies were in effect.

106.    Through its conduct, described above, Universal acted in continuing violation of the Universal Policies.

## CAUSES OF ACTION

### COUNT I
**(Declaratory Relief Against Chrysler Insurance, Great American, Lumbermens, and Universal; Injunctive Relief Against Chrysler Insurance and Universal)**

107.    Sonic re-alleges and incorporates herein by reference each and every allegation set forth in the above-numbered Paragraphs.

108.    Coverage for the Underlying Suits is provided by Coverage E of the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and, upon information and belief, any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

109.    Chrysler Insurance has a duty to defend Sonic in the Underlying Suits, including a duty to pay for the independent counsel to which Sonic is entitled, pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and pursuant to any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

110. Chrysler Insurance must reimburse Sonic for past defense costs and must pay Williams & Connolly for future defense costs of the Underlying Suits pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and pursuant to any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

111. Defense costs paid to defend Sonic pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies, or pursuant to any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies, do not erode and are in addition to the Limits of Insurance.

112. Coverage for the Owens/Price Suits is provided by Parts 500 and 980 of the Universal Policies.

113. Universal has a duty to defend Sonic in the Owens/Price Suits, including a duty to pay for the independent counsel to which Sonic is entitled, pursuant to Parts 500 and 980 in each of the Universal Policies.

114. Universal must reimburse Sonic for past defense costs and must pay Williams & Connolly for future defense costs of the Owens/Price Suits pursuant to Parts 500 and 980 in each of the Universal Policies.

115. Defense costs paid to defend Sonic pursuant to Parts 500 and 980 of the Universal Policies do not erode and are in addition to the limits of insurance.

116. Coverage for the Underlying Suits is provided by the Auto Dealer Enhancement Coverage under the Great American Umbrella Policy.

117. Upon exhaustion of the underlying insurance, the claims at issue in the Underlying Suits are covered by the Lumbermens Excess Policy issued by Lumbermens to Sonic.

118. Sonic fully complied with all terms and conditions of the Chrysler Insurance Garage Coverage Policies, the Universal Policies, the Great American Umbrella Policy, and the Lumbermens Excess Policy, performing its obligations under such policies.

**COUNT II**
**(Breach of Contract Against Chrysler Insurance and Universal)**

119. Sonic re-alleges and incorporates herein by reference each and every allegation set forth in the above-numbered Paragraphs.

120. Chrysler Insurance has a duty to defend the Underlying Suits, including a duty to pay for the independent counsel to which Sonic is entitled, pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and pursuant to any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

121. Universal has a duty to defend the Owens/Price Suits, including a duty to pay for the independent counsel to which Sonic is entitled, pursuant to Parts 500 and 980 of the Universal Policies.

122. Chrysler Insurance wrongfully and unjustifiably denied that the types of claims and allegations at issue in the Underlying Suits fell within the scope of Coverage E of the Auto Dealer Enhancement Package. In addition, Chrysler Insurance wrongfully and unjustifiably

29

sought, for the <u>Galura</u> Suit, to shift coverage from Coverage E of the Auto Dealer Enhancement Package to the Customer Complaint Endorsement and, for the <u>Owens/Price</u> Suits, to mischaracterize coverage under the Customer Complaint Endorsement in order to limit the amount that Chrysler Insurance would have been required to pay under the Chrysler Insurance Garage Coverage Policies and under any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

123.    Universal wrongfully and unjustifiably denied that the types of claims and allegations at issue in the Underlying Suits fell within the scope of the Statute and Title E&O coverage of Parts 500 and 980 of the Universal Policies. In addition, Universal wrongfully and unjustifiably sought, for the <u>Owens/Price</u> Suits, to mischaracterize coverage under the Customer Complaint Defense provision in order to preclude coverage under the Universal Policies.

124.    Chrysler Insurance failed to honor its duty to defend the Underlying Suits, including its duty to pay for the independent counsel to which Sonic is entitled, pursuant to the Auto Dealer Enhancement Package and pursuant to any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

125.    Universal failed to honor its duty to defend the <u>Owens/Price</u> Suits, including its duty to pay for the independent counsel to which Sonic is entitled, pursuant to Parts 500 and 980 of the Universal Policies.

126. As a direct and proximate result of Chrysler Insurance's wrongful conduct, Sonic suffered injury by, inter alia, being required to pay defense costs for the Underlying Suits that otherwise should have been borne by Chrysler Insurance and being required to engage and pay for coverage counsel to seek to enforce the plain terms of the Auto Dealer Enhancement Package and any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.

127. As a direct and proximate result of Universal's wrongful conduct, Sonic suffered injury by, inter alia, being required to pay defense costs for the Owens/Price Suits that otherwise should have been borne by Universal and being required to engage and pay for coverage counsel to seek to enforce the plain terms of the Universal Policies.

128. Chrysler Insurance's and Universal's breach of their respective duties is material, substantially defeats the purpose the agreements, and constitutes a substantial failure to perform.

### COUNT III
### (Breach of the Implied Covenant of Good Faith and Fair Dealing / Bad Faith Against Chrysler Insurance)

129. Sonic re-alleges and incorporates herein by reference each and every allegation set forth in the above-numbered Paragraphs.

130. Chrysler Insurance has a duty to act in good faith and deal fairly with Sonic under the Chrysler Insurance Garage Coverage Policies .

131. Chrysler Insurance acted wrongfully, unreasonably, and in bad faith by recognizing for years that the types of claims and allegations at issue in the Underlying Suits fell within the scope of Coverage E of the Auto Dealer Enhancement Package but then, without legitimate justification, sought to mischaracterize coverage under the Customer Complaint

Endorsement and eventually to deny any claim of coverage under the Chrysler Insurance Garage Coverage Policies.

132. Chrysler Insurance wrongfully, unreasonably, and in bad faith refused to pay for required defense costs that it contractually is obligated to provide.

133. Chrysler Insurance's breach of its duty of good faith has been intentional, willful, oppressive, unscrupulous, insulting, rude, capricious, and/or in reckless disregard of Sonic's rights under the Chrysler Insurance Garage Coverage Policies.

134. As a direct and proximate result of Chrysler Insurance's conduct, Sonic suffered injury by, inter alia, being required to pay defense costs that otherwise should have been borne by Chrysler Insurance and being required to engage coverage counsel to seek to enforce the plain terms of the Auto Dealer Enhancement Package.

**COUNT IV**
**(Claims for Unfair and Deceptive Trade Practices**
**Against Chrysler Insurance and Great American)**

135. Sonic re-alleges and incorporates herein by reference each and every allegation set forth in the above-numbered Paragraphs.

136. Sonic brings the claims asserted in this Count under the NCUDTPA solely as a resident of North Carolina that has suffered injury in North Carolina due to the actions of Chrysler Insurance and Great American. To the extent that the Court determines that North Carolina law does not apply, Sonic applies the comparable unfair and deceptive trade practices statute from the appropriate jurisdiction.

137. Chrysler Insurance's and Great American's conduct constitutes unfair claim settlement practices in violation of one or more of the following statutes: N.C.G.S. §§ 58-63-15(11)(a), (d), (h), and/or (n). Such violations constitute *per se* violations of the NCUDTPA, N.C.G.S. § 75-1.1, et seq.

138. Chrysler Insurance's and Great American's conduct also constitute separate violations of the NCUDTPA, N.C.G.S. § 75-1.1, et seq.

139. Chrysler Insurance's and Great American's conduct was in and affecting commerce.

140. Chrysler Insurance's and Great American's conduct was unfair and deceptive within the meaning of the NCUDTPA. Such conduct violated established public policy, was immoral, unethical, oppressive, unscrupulous, and was substantially injurious to consumers.

141. Chrysler Insurance's conduct further evidences an effort to assert inequitably its position of power to force Sonic to accept less than what it bargained for in purchasing the policies at issue.

142. As a direct and proximate result of Chrysler Insurance's and Great American's conduct, Sonic suffered injury by, inter alia, being required to pay defense costs that otherwise should have been borne by Chrysler Insurance and being required to engage and pay for coverage counsel to seek to enforce the plain terms of its policies with Chrysler Insurance and Great American.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

## REQUESTS FOR RELIEF

For the reasons stated above, Plaintiff Sonic Automotive, Inc. requests judgment in its favor and against Defendants as follows:

(a)     For a declaration that the Underlying Suits are covered by Coverage E of the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies issued by Chrysler Insurance to Sonic and any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits, by the Universal Policies issued by Universal to Sonic, by the Great American Umbrella Policy issued by Great American to Sonic, and upon exhaustion of the underlying insurance, by the Lumbermens Excess Policy issued by Lumbermens to Sonic;

(b)     For a declaration that Chrysler Insurance breached its duty to defend, including its duty to pay for the independent counsel to which Sonic is entitled, pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits;

(c)     For a declaration that Universal breached its duty to defend, including its duty to pay for the independent counsel to which Sonic is entitled, pursuant to Parts 500 and 980 of the Universal Policies.

(d)     For a declaration that Chrysler Insurance breached its duty of good faith and fair dealing under the Chrysler Insurance Garage Coverage Policies and any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.;

(e)     For an Order requiring Chrysler Insurance to reimburse Sonic for past costs paid to Williams & Connolly to defend the Underlying Suits pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.;

(f)     For a declaration that Chrysler Insurance must pay Williams & Connolly's future defense costs for defending the Underlying Suits pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies and any other policies that Chrysler Insurance issued to Sonic with substantially similar terms and conditions to the Chrysler Insurance Garage Coverage Policies that provide coverage to Sonic for claims arising from acts occurring during the class periods of the Underlying Suits.;

(g)     For an Order requiring Universal to reimburse Sonic for past costs paid to Williams & Connolly to defend the Owens/Price Suits pursuant to Parts 500 and 980 of the Universal Policies;

(h)     For a declaration that Universal must pay Williams & Connolly's future defense costs for defending the <u>Owens/Price</u> Suits pursuant to Parts 500 and 980 of the Universal Policies;

(i)     For a declaration that defense costs paid to defend Sonic pursuant to the Auto Dealer Enhancement Package under the Chrysler Insurance Garage Coverage Policies do not erode and are in addition to the Limits of Insurance;

(j)     For a declaration that defense costs paid to defend Sonic pursuant to Parts 500 and 980 of the Universal Policies do not erode and are in addition to the Limits of Insurance;

(k)     For a declaration that defense costs paid to defend Sonic pursuant to the Auto Dealer Enhancement Coverage under the Great American Umbrella Policy do not erode and are in addition to the Limits of Insurance;

(l)     For damages against Chrysler Insurance for breach of its duty to defend, including its duty to pay for the independent counsel to which Sonic is entitled, and violation of the covenant of good faith and fair dealing;

(m)    For damages against Universal for breach of its duty to defend, including its duty to pay for the independent counsel to which Sonic is entitled;

(n)     For damages against Chrysler Insurance and Great American for unfair and deceptive trade practices;

(o)     For punitive and/or treble damages in an amount to be determined;

(p)     For Sonic's interest, attorneys' fees, and costs pursuant to law; and

(q)     For such other and further relief as this Court may deem equitable, just, and

proper.

Respectfully submitted,

Stephen J. Butler (0010401), Trial Attorney
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 352-6587 (phone)
(513) 241-4771 (fax)
steve.butler@thompsonhine.com

ATTORNEY FOR PLAINTIFF SONIC
AUTOMOTIVE, INC.

OF COUNSEL

Stephen A. Weisbrod, *pro hac vice*
    application to be filed
Kevin S. Willen, *pro hac vice* application
    to be filed
Derek Y. Sugimura, *pro hac vice*
    application to be filed
Gilbert LLP
1100 New York Avenue, Suite 700
Washington, DC  20005
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
E-mail:     Willenk@gotofirm.com