IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Sonic Automotive, Inc., | : | |
| | : | Case No. 1:10-cv-717 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER |
| Chrysler Insurance Company, *et al.* | : | |
| | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Chrysler Insurance Company's Motion to Dismiss
(doc. 31), Great American Assurance Company's Motion to Dismiss (doc. 32), Lumbermens
Mutual Casualty Company's Motion to Dismiss (doc. 33), and Universal Underwriters Insurance
Company's Motion to Dismiss (doc. 36). Plaintiff Sonic Automotive, Inc. brings this suit
seeking coverage pursuant to numerous insurance policies it purchased from the four defendant
insurance companies (collectively, "the Defendant Insurers"). The Defendant Insurers move to
dismiss on the grounds that the applicable claims are untimely.

For the reasons that follow, Chrysler Insurance's Motion is **GRANTED IN PART AND
DENIED IN PART**, Great American's Motion is **GRANTED IN PART AND DENIED IN
PART**, Lumbermens' Motion is **DENIED**, and Universal's Motion is **GRANTED IN PART
AND DENIED IN PART**.

1

## I.      BACKGROUND

### A.      Allegations Common to All Claims[1]

Sonic owns a nationwide network of automobile dealerships, including dealerships in Ohio.  (Doc. 1 ¶11.)  Sonic offers financing for vehicles sold at its dealerships.  (*Id.*)  Sonic has been named as a defendant in at least three lawsuits concerning its sales to consumers of a theft-deterrent product called Etch, which consisted of an identifying number which was acid-etched into an automobile's windows.  (*Id.* ¶¶ 12-13.)

On December 30, 2002, Sonic was named as a defendant in a putative class action styled *Virginia Galura et al. v. Sonic Automotive, Inc.*, Case No. 02-12274-Div. B, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "*Galura* Suit"). The *Galura* Plaintiffs, who purchased vehicles at Sonic dealerships during June 2000, alleged that the dealerships had failed to disclose that the price of the Etch product was included in the amount of financing they obtained.  (*Id.* ¶¶ 14-19.)  The *Galura* Plaintiffs alleged civil violations of federal and Florida truth-in-lending/truth-in-leasing statutes.  (*Id.* ¶ 18.)  The Florida courts certified a class in the *Galura* Suit.  (*Id.* ¶ 20.)  The *Galura* Plaintiffs have moved for partial summary judgment against Sonic.  (*Id.* ¶¶ 21-22.)

On November 15, 2004, Sonic and certain Sonic dealerships in South Carolina were named as defendants in a second putative class action, *Misty Owens et al. v. Automobile Protection Corporation et al.*, No. 04-CP46-2997, in the Court of Common Pleas for York County, South Carolina (the "*Owens* Suit").  (*Id.* ¶ 24.)  The *Owens* Suit was stayed in favor of

---

[1] The allegations stated by Sonic in the Complaint are assumed to be true for purposes of the pending motions except as otherwise specifically noted.

mandatory arbitration.  (*Id.* ¶ 25.)  On April 4, 2005, the *Owens* Plaintiffs filed a Class

Arbitration Demand against Sonic and the same Sonic dealerships in *Misty Owens et al. v.*

*Automobile Protection Corporation et al.*, No. 30 459 00642 05, before the American Arbitration

Association ("AAA") (the "*Owens* Arbitration").  (*Id.* ¶ 25.)

On February 14, 2005, Sonic and certain Sonic dealerships in North Carolina were named

as defendants in a third putative class action, *Robert Price et al. v. Automobile Protection*

*Corporation et al.*, No. 05-CVS-00157, in the General Court of Justice, Superior Court Division,

of Lincoln County, North Carolina (the "*Price* Suit").  (*Id.* ¶ 26.)  The *Price* Suit was stayed in

favor of mandatory arbitration.  (*Id.* ¶ 27.)  On August 17, 2010, the *Price* suit was removed to

the United States District Court for the Western District of North Carolina, *Robert Price et al.v.*

*Automobile Protection Corporation et al.*, No. 5:10-cv-00112-RLV-DSC.  On May 16, 2005, the

*Price* Plaintiffs filed a Class Arbitration Demand against Sonic and the same South Carolina

dealerships in *Robert Price et ai. v. Automobile Protection Corporation et al.*, No. 11 18801140

OS, before the AAA (the "*Price* Arbitration").  (*Id.*)

The *Owens* and *Price* Arbitrations were consolidated in October 2005 in *Misty Owens et*

*al. v. Automobile Protection Corporation et al.*, No. 30 459 00642 OS, before the AAA (the

"*Owens/Price* Arbitration").  (*Id.* ¶ 28.)  The *Owens/Price* Claimants alleged that the Sonic

dealerships told purchasers and lessees that they had to purchase *Etch* in order to obtain

financing.  (*Id.* ¶ 29.)  The *Owens/Price* Claimants alleged that their purchases and leases

occurred between June 2001 and February 2003.  (*Id.* ¶ 31.)  The *Owens/Price* Claimants alleged

violations of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act;

violations of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA");

breach of contract; and violations of the federal Truth-in-Lending Act. (*Id.* ¶¶ 30, 34.) A class has been certified in the *Owens/Price* Arbitration. (*Id.* ¶ 33.) The *Owens/Price* Arbitration remained pending as of the date this suit was filed. (*Id.* ¶ 35.) However, the *Owens/Price* Claimants are seeking confirmation of the class certification and Sonic is seeking vacation of the class certification in federal court. (*Id.* ¶ 35.)

Defendant Insurers each issued insurance policies to Sonic that were in effect during the relevant time period. Sonic alleges generally that Defendant Insurers have denied coverage or failed to acknowledge coverage under the pertinent policies for the the *Galura* Suit, the *Owens* Suit, the *Price* Suit, and the *Owens/Price* Arbitrations (collectively, the "Underlying Suits"). (*Id. passim.*) The Court will address the specific allegations against each Defendant Insurer in the Analysis section below.

**B.     Procedural History**

Sonic filed its Complaint (doc. 1) against the Defendant Insurers on October 15, 2010. (*Id.*) Subject-matter jurisdiction is premised upon complete diversity of citizenship. (*Id.* ¶¶ 2-6.)[2] Sonic asserts four causes of action:

1.     Declaratory judgment against all four Defendant Insurers;
2.     Breach of contract against Chrysler Insurance and Universal Underwriters;
3.     Breach of the implied covenant of good faith and fair dealing/bad faith against Chrysler Insurance; and
4.     Unfair and deceptive trade practices against Chrysler Insurance and Great American in violation of the NCUDTPA.

(*Id.* ¶¶ 107-42.) Defendant Insurers have responded by filing the pending dismissal motions.

_____

[2] Sonic alleges that it is a citizen of North Carolina, Chrysler Insurance of Michigan, Great American of Ohio, Lumbermens of Illinois, and Universal of Kansas. (*Id.*)

4

## II.     STANDARD OF LAW

Defendant Insurers move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) permits a party to move for dismissal for "failure to state a claim upon which relief can be granted."  On a Rule 12(b)(6) motion, a district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

To withstand a dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563.

## III.     ANALYSIS

## A.     Applicable Statute of Limitations

Each of the Defendant Insurers, except Lumbermens, seeks dismissal based on the applicable statutes of limitations.  Determining whether Sonic's claims are timely requires a complex conflict of law analysis.  "[F]ederal courts sitting in diversity must apply the

choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998); *see also Curl v. Greenlee Textron, Inc.*, 404 F. Supp. 2d 1001, 1004 (S.D. Ohio 2005). Ohio courts have "adopted the Restatement (Second) of Conflict of Laws to govern conflict of law issues." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 834 (N.D. Ohio 2010); *see also Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 341-42, 474 N.E.2d 286 (1984) ("We hereby adopt the theory stated in the Restatement of the Law of Conflicts, as it is more reflective of our past decisions and also provides sufficient guidelines for future litigation.").

There is a dispute among Ohio and federal courts whether to apply the 1971 version or the 1988 revision of § 142. The 1971 version of the Restatement (Second) of Conflict of Laws § 142 provides as follows:

> (1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state.

> (2) An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state, except as stated in § 143.

Restatement (Second) Conflict of Law § 1942 (1971).[3] Therefore, an analysis pursuant to the 1971 version of § 142 focuses only on Ohio limitations laws.

The Restatement (Second) of Conflict of Laws § 142 was revised in 1988. The 1988 revision of § 142 states as follows:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the

---

[3] No party contends that Restatement (Second) of Conflict of Laws § 1943 is applicable in this case.

6

exceptional circumstances of the case make such a result unreasonable:

(1) The forum will apply its own statute of limitations barring the claim.

(2) The forum will apply its own statute of limitations permitting the claim unless:

(a) maintenance of the claim would serve no substantial interest of the forum; and

(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) Conflict of Law § 142 (1988).  Accordingly, under the 1988 revision, a claim is time-barred in Ohio if the claim would be barred in a state having a more significant relationship to the parties and the occurrence.

Additionally, Ohio enacted a borrowing statute which became effective on April 7, 2005. Ohio Rev. Code § 2305.03.  The statute does not apply retroactively to claims which accrued prior to the effective date.  *See Dudek*, 702 F. Supp. 2d at 837-38; *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp. 2d 899, 918-19 (S.D. Ohio 2009).  The statute states as follows:

(A) Except as provided in division (B) of this section and unless a different limitation is prescribed by statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code.  If interposed by proper plea by a party to an action mentioned in any of those sections, lapse of time shall be a bar to the action.

(B) No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.

*Id.*  The borrowing statute prevents a plaintiff from asserting a claim in Ohio if the claim would be barred by the statute of limitations of the state in which the claim accrued.

Defendant Insurers contend that the Court should apply the 1988 revision of § 142.  If the

1988 revision is applied to the facts of this case, the North Carolina statutes of limitations must be examined because North Carolina has a more significant relationship than Ohio to the parties and the occurrence.[4]  However, Sonic asserts that the Court should apply the 1971 version of § 142, not the 1988 revision.  If the 1971 version is applied, only Ohio law is relevant with regard to claims accruing before April 7, 2005, the effective date of Ohio's borrowing statute.

The Ohio Supreme Court has not expressed an opinion on whether to apply the 1971 version or the 1988 revision of the Restatement (Second) of Conflict of Laws § 142.  At least one court in the Southern District of Ohio, when directly presented with the issue, determined that the 1988 revision of § 142 should be applied.  *Curl*, 404 F. Supp. 2d at 1011.  The *Curl* court considered the Ohio Legislature's enactment of the Ohio borrowing statute in April 2005 to be evidence that "Ohio uses the more modern functional approach to conflicts questions."  *Id.* at 1008.  The *Curl* court also noted that the majority of circuits that had adopted the Restatement applied the 1988 revision of the Restatement.  *Id.* at 1011 (citations omitted).  The court concluded as follows: "Considering Ohio's long-term commitment to the Restatement's functional analysis of choice-of-law issues and in light of the majority of the circuits' adoption of the 1988 Revision and considering [*sic*], this Court will apply the 1988 Revision to the case sub judice."  *Id.* at 1011.

Other federal courts have continued to apply that the original 1971 version of § 142, both

---

[4]  Underlying Defendants' contentions is their belief that Sonic has engaged in improper forum-shopping by filing this action in Ohio.  Defendants, Chrysler Insurance in particular, insist that Sonic should not be permitted to take advantage of the longer limitations periods in Ohio.  However, and importantly, Defendants do not move to dismiss or move to transfer based on improper venue.  Defendants accuse Sonic of improper forum-shopping, but they concede that venue is permissible in the Southern District of Ohio.

pre- and post-*Curl*.  *See*, *e.g.*, *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (quoting and applying the 1971 version of § 142); *Dudek*, 702 F. Supp. 2d at 834 n.8 (quoting and applying the 1971 version); *Ormond v. Anthem, Inc.*, No. 1:05-cv-1908, 2008 WL 906157, at *18 (S.D. Ind. Mar. 31, 2008) (analyzing Ohio law); *Godwin v. Real Estate Inv. Mgmt., Inc.*, No. 2:00-cv-1402, 2001 WL 1681122, at *3 (S.D. Ohio Aug. 21, 2001) (quoting and applying 1971 version).

Perhaps more significantly, most Ohio courts have continued to apply the 1971 version of the Restatement (Second) of Conflict of Laws § 142.  *See*, *e.g.*, *Capital One Bank (USA), N.A. v. Rodgers*, No. CT2009-0049, 2010 WL 3620304, at *2 ¶ 18 (Ohio App. Sept. 14, 2010); *Unifund CCR Partners Assignee of Palisades Collection, LLC v. Childs*, No. 23161, 2010 WL 703274, at *3 ¶ 15 (Ohio App. Feb. 26, 2010); *Nationwide Mut. Fire Ins. Co. v. Rose*, No. 05CA008814, 2007 WL 789426, at *2 ¶ 7 (Ohio App. Mar. 19, 2007); *but see Resner v. Owners Ins. Co.*, No. CA 2001 0091, 2002 WL 236970, at *2 (Ohio App. Feb. 14, 2002) (stating that the Ohio Supreme Court had not adopted § 142 of the Restatement of the Law of Conflicts, but analyzing the 1988 revision of § 142 as a hypothetical).  The Ohio courts that applied the 1971 version of § 142 did so without addressing the 1988 revision.

In the absence of direction from the Ohio Supreme Court, this Court will follow the majority position adopted by both state and federal courts applying Ohio law.  This Court will apply the 1971 version of the Restatement (Second) of Conflict of Laws § 142.

**B.      Chrysler Insurance's Motion to Dismiss**

**1.      Allegations against Chrysler Insurance.**

Chrysler Insurance issued Sonic at least three separate liability policies, known as Garage Coverage Policies, which were effective from approximately December 1, 1999 through January

1, 2003.  (Doc. 1 ¶ 37 and Exs. E-H.)  Chrysler Insurance issued another policy, Policy No. CPP4265, for the period from April 1, 1999 through December 10, 1999, which provided similar coverage as the Garage Coverage Policies.  (*Id.* ¶ 38.)  Each of the Garage Coverage Policies included an Auto Dealer Enhancement Package with a "Coverage E" provision.  (*Id.* ¶ 39 and Ex. H.)  The Coverage E provision provided "liability coverage" for sums an "insured legally must pay as damages arising from an occurrence because of an alleged or actual negligent act or error or omission by an insured" resulting from a violation of truth-in-lending laws.  (*Id.* (internal quotations omitted).)  Sonic alleges that the types of claims and allegations made in the Underlying Suits against Sonic fall within the scope of coverage provided in the Coverage E provision.  (*Id.* ¶ 44.)

Chrysler Insurance acknowledged coverage of Sonic for the *Galura* Suit under the Coverage E provision, and specifically for claims made pursuant to unfair and deceptive trade practices statutes in letters dated November 5, 2002, March 24, 2002, and May 13, 2004.  (*Id.* ¶¶ 69-71.)  In the May 13, 2004 letter, however, Sonic stated for the first time that coverage also might arise under the Customer Complaint Endorsement of its Garage Coverage Policies.  The Customer Complaint Endorsement contained lower coverage limits than the Coverage E provision and did not provide coverage for violations of truth-in-lending or truth-in-leasing laws. (*Id.* ¶ 72 and Ex. P.)  Then, in a letter dated July 21, 2005, after the class was certified in the *Galura* Suit, Chrysler Insurance denied coverage for the *Galura* Suit under the Coverage E provision and stated that coverage would arise under only the Customer Complaint Endorsement. (*Id.* ¶ 73 and Ex. Q.)  Chrysler Insurance stated that its coverage was limited to $25,000 in damages and defense costs pursuant to the Customer Complaint Endorsement.  (*Id.* Exs. P and

Q.)[5]

As to the *Owens* and *Price* Suits, Chrysler Insurance limited its coverage to that arising under the Customer Complaint Endorsement in letters dated December 6, 2004 and March 8, 2005.  (*Id.* ¶¶ 74-77 and Exs. R, S.)  Chrysler Insurance did agree to pay Sonic's defense costs for the *Owens* and *Price* Suits.

In June 2010, Sonic requested Chrysler Insurance to reassess whether the Coverage E provision applied to the Underlying Suits.  (Doc. 1 ¶ 78 and Ex. T.)  Chrysler Insurance, in responding, referred Sonic to its previously-stated positions, but requested that Sonic provide it with then-current pleadings from the Underlying Suits.  (*Id.* ¶ 78 and Ex. U.)  In a subsequent letter dated July 27, 2010, Chrysler Insurer informed Sonic that "it remain[ed their] position"

---

[5] Although not alleged in Sonic's Complaint, Chrysler Insurance submits as evidence a letter dated June 6, 2007 from Chrysler Insurance to Sonic.  Chrysler Insurance stated in the letter that based on decisions in the trial court and appellate court in the *Galura* Suit, Chrysler Insurance had determined that coverage for the *Galura* Suit was excluded under its policies.  (Doc. 31-1.)  Chrysler Insurance further stated in the June 6, 2007 letter that if coverage had existed under the Customer Complaint Endorsement, the limits of liability had been exhausted and no further defense would be provided.  (*Id.*)

Chrysler Insurance contends that the letter is relevant to the allegations in the Complaint.  Further, the June 6, 2007 letter specifically was referenced in the Chrysler Insurance's July 27, 2010 letter to Sonic, which Sonic did attach to the Complaint.  (Doc. 1 Ex. W.)  Ordinarily, the Court might find that the June 6, 2007 letter could be considered on the dismissal motion because it falls within the scope of the Complaint.  *See Weiner*, 108 F.3d at 89 (stating that documents which a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referenced in the complaint and central to the claims therein).

However, Sonic states that there is a genuine material dispute of fact whether Chrylser Insurance sent and Sonic received the letter.  Sonic was unable to find a copy of the letter in its insurance correspondence files.  *See* Weisbrod Dec. ¶¶ 4-6.  The Court cannot resolve disputed facts on a dismissal motion.  It follows that the Court should not consider on a dismissal motion a document, not attached to the Complaint, to decide facts that are in dispute.  *In re Cardinal Health Inc. Sec. Lit.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006).

11

that no coverage was available under the Garage Coverage Policies. (*Id.* Ex. W.)

Regarding a separate, but related issue, Sonic retained the law firm of Williams & Connolly, with the assistance of local counsel, to represent it in the Underlying Suits. Chrysler Insurance informed Sonic that it would accept and pay invoices only from local counsel in letters dated April 24, 2003 as to the *Galura* Suit, December 6, 2004 as to the *Owens* Suit, and March 8, 2005 as to the *Price* Suit. (*Id.* ¶¶ 80-82.) Sonic alleges that Chrysler Insurance's refusal to pay invoices incurred from Williams & Connolly constituted a breach of its duty to defend. (*Id.* ¶ 84.)

### 2. Timeliness of Claims against Chrysler Insurance

Sonic has alleged breach of contract, breach of the covenant of good faith and fair dealing/bad faith, and violation of the NCUDTPA against Chrysler Insurance. It also seeks a declaration of coverage. The parties agree that North Carolina substantive law governs Sonic's claims.

Sonic alleges in the breach of contract claim that Chrysler Insurance breached its duty to defend Sonic in the Underlying Suits. Pursuant to the 1971 version of the Restatement (Second) of Conflict of Laws § 142, the Court initially must apply Ohio law to determine whether the breach of contract claim is timely. Ohio's statute of limitations on claims arising from written contracts is fifteen years. Ohio Rev. Code § 2305.06. Sonic filed its Complaint on October 15, 2010. Reading the Complaint liberally, Sonic alleges that Chrysler Insurance denied coverage under the Coverage E provision for the *Owens* and *Price* Suits on December 6, 2004 and March 8, 2005, both dates that are within Ohio's fifteen-year limitation period. The claim is timely under Ohio law to the extent Sonic seeks to recover defense costs for the *Owens* and *Price* Suits

12

arising after those dates, but before April 7, 2005 (the effective date of the borrowing statute).

However, Ohio's borrowing statute prohibits Sonic from asserting a claim in Ohio if the claim would be barred by the statute of limitations of North Carolina, the state in which the claim accrued.  North Carolina law is relevant only to the extent that Sonic's breach of contract claim accrued on or after April 7, 2005.  North Carolina's statute of limitations for claims arising from the breach of an insurance contract is three years.  N.C. Gen. Stat. § 1-52.  Under North Carolina law, "the statute of limitations for contracts in this state commences on the date the contractual promise is broken."  *Duke Univ. v. St. Paul Mercury Ins. Co.*, 384 S.E.2d 36, 41 (N.C. App. 1989).  The three-year limitations period for the breach of an insurance contract does not commence until the insurer denies coverage.  *Wm. C. Vick Const. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 594 (E.D. N.C. 1999).  Sonic implicitly concedes that its Complaint is untimely to the extent that any breach of contract claim accrued between April 7, 2005 (the effective date of Ohio's borrowing statute) and October 14, 2007 (more than three years prior to the date the Complaint was filed).  (Doc. 43 at 20-21.)  Sonic alleges that Chrysler Insurance first denied the applicability of Coverage E provision in respect to the *Galura* Suit in a letter dated July 21, 2005.  That denial triggered the three-year North Carolina statute of limitations for purposes of a breach of the duty to defend in regards to the *Galura* Suit.

However, the "duty to defend under the liability policy is a continuing obligation to defend throughout the course of the underlying litigation."  *Duke Univ.*, 384 S.E.2d at 41. Therefore, after the insurer denies coverage, "an insured has three years from the date each legal expense is incurred to bring suit against the insurer for its refusal to defend the insured."  *Id.* at 41-42; *see also Wm. C. Vick Const. Co.*, 52 F. Supp. 2d at 594 (explaining *Duke*).  Because

Chrysler Insurance had a continuing duty to defend, its breach of contract claim is timely to the extent it is based on a failure to reimburse Sonic for legal expenses incurred in the Underlying Suits on and after October 15, 2007.

Turning to Sonic's claim for breach of the implied duty of good faith/bad faith ("bad faith claim") against Chrysler Insurance, Sonic alleges that Chrysler Insurance acted in bad faith by first recognizing, but then denying, coverage under the Coverage E provision.  Under Ohio law, a bad faith claim is a tort subject to a four-year statute of limitations.  *United Dep't Stores Co. No. 1 v. Continental Cas. Co.*, 41 Ohio App. 3d 72, 534 N.E.2d 878, 880 (1987).  A bad faith claim under North Carolina law arises out of the contract and is subject to the same three-year statute of limitations.  *See Lanier v. State Farm Fir and Cas. Co.*, No. 5:07CV129-V, 2009 WL 926914, at *2 (W.D. N.C. Mar. 31, 2009).  A bad faith claim is triggered under North Carolina law by the date of a plaintiff's "actual loss."  *Id.*  Chrysler Insurance denied coverage under the Coverage E provision for the *Owens* and *Price* Suits on December 6, 2004 and March 8, 2005, both prior to the effective date of Ohio's borrowing statute.  Sonic's bad faith claim is barred by Ohio's statute of limitations to the extent it is based on a denial of coverage in the *Owens* and *Price* Suits.  Chrysler Insurance first denied the applicability of Coverage E provision in respect to the *Galura* Suit on July 21, 2005, after the effective date of Ohio's borrowing statute.  Under North Carolina law, a bad faith claim premised upon the denial of coverage in the *Galura* Suit also is untimely.  The bad faith claim must be dismissed in its entirety.

Regarding the statutory claim against Chrysler Insurance for a violation of the NCUDTPA, N.C. Gen. Stat. §§ 75-1 *et seq.*, that claim is subject to a four-year statute of limitations.  *See* N.C. Gen. Stat. § 75-16.2.  "A cause of action for unfair and deceptive trade

practices [under the NCUDTPA] accrues when the right to institute and maintain a suit arises." *Hinson v. United Fin. Servs., Inc.*, 473 S.E.2d 382, 386-87 (N.C. App. 1996) (internal quotation and citation omitted). Stated differently, "a cause of action pursuant to § 75-16 accrues when the violation occurs." *Id.*

In *Piles v. Allstate Insurance Company*, the court stated that a cause of action for unfair and deceptive trade practices accrues when the insurer denies the insured's claim. 653 S.E.2d 181, 185-86 (N.C. App. 2007). The insured and the insurer in *Piles* had exchanged correspondence prior to November 2004 regarding whether the insured had underinsured motorists ("UIM") coverage under her policy and the insurer had responded that she did not. *Id.* at 183. However, the insured's entitlement to the UIM coverage did not accrue under the contract until November 2004 when she exhausted the tortfeasor's policy limits and the insurer denied her UIM claim. *Id.* at 183, 185. The court held that the November 2004 denial, not the earlier representations that her policy lacked UIM coverage, triggered the limitations period. *Id.* at 185-86.

Here, it can be inferred from the pleadings that Sonic made a claim for defense costs for the Underlying Suits at unspecified dates prior to July 21, 2005 for the *Galura* suit, prior to December 6, 2004 for the *Owens* Suit, and prior to March 8, 2005 for the *Price* Suit. On those three specified dates, Chrysler Insurance limited its coverage of Sonic for the damages and defense costs arising from the Underlying Suits to the coverage arising under the Customer Complaint Endorsement, and in essence, denied coverage under the Coverage E provision for the damages and defense costs. Those denials triggered the statute of limitations for purposes of the NCUDTPA. *See Piles*, 653 S.E.2d at 185-86 (stating that the denial of an existing contractual

15

right triggered the limitations period). The four-year limitations periods triggered by each of the denials expired before Sonic filed this suit on October 15, 2010. Therefore, Sonic's NCUDTPA claim is untimely.

Sonic has not established that Chrysler's Insurance's reiteration of the denials of coverage in 2010, made in response to Sonic's request for reconsideration, triggered a new limitations period for the NCUDTPA or bad faith claims. Importantly, Sonic does not contend that *Duke University. v. St. Paul Mercury Insurance Company*—the case which held that a new limitations period for a breach of duty to defend claim is triggered by each new legal expense incurred—is applicable to the NCUDTPA or the bad faith claims. 384 S.E.2d at 41.

Finally, as to Sonic's claim for declaratory and injunctive relief, Sonic seeks a declaration that Chrysler Insurance has a duty to defend Sonic and that coverage for the Underlying Suits exists pursuant to the Coverage E provisions. Sonic and Chrysler Insurance agree that any claim for indemnification of damages owing by Sonic as a result of judgments or settlements in the Underlying Suits accrues only after such judgment[s] are entered or settlements are reached. (Doc. 43 at 25; Doc. 46 at 16-17.) Chrysler Insurance, nonetheless, moves for dismissal of this claim. Chrysler Insurance argues, assuming claims for coverage under the Coverage E provision are barred by the applicable statute of limitations, that claims for coverage under the Customer Complaint Endorsement are futile because policy limits have been exhausted. However, Sonic's claims for coverage under the Coverage E provision survive the Rule 12(b)(6) motion. Chrysler Insurance's premise is flawed and the Court will not dismiss the claim for declaratory relief.

Accordingly, the Court will grant in part and deny in part Chrysler Insurance's Motion to

16

Dismiss.  Sonic's breach of contract claim premised on the alleged breaches of the duty to defend is dismissed to the extent that Sonic seeks reimbursement for defense costs incurred in the Underlying Suits between April 7, 2005 and October 14, 2007.  Likewise, Sonic's claims for bad faith and for violation of the NCUDTPA also are dismissed.

## C.      Great American's Motion to Dismiss

### 1.      Allegations Against Great American

Great American issued an umbrella policy to Sonic effective from December 1, 2001 through December 1, 2002.  (Doc. 1 ¶ 45 and Ex. I.)  The Great American Umbrella Policy provided additional coverage for certain claims covered by Chrysler Insurance's Garage Coverage Policies.  The Umbrella Policy contained a General Endorsement for Auto Dealer Enhancement Coverage that "follow[ed] form" to the Auto Dealer Enhancement Page of the Chrysler Insurance Garage Coverage Policy, including the Coverage E provision thereof.  (*Id.* ¶¶ 46-47, 88 and Ex. I at 14.)  Sonic alleges that it is entitled to coverage for the Underlying Suits under the Umbrella Policy to the same extent that it is entitled to coverage under the Chrysler Insurance Garage Coverage Policy.  (*Id.* ¶ 49.)  Sonic also alleges that its coverage under the Umbrella Policy include defense costs.  (*Id.* ¶ 50.)

Sonic tendered notice to Great American about the Underlying Suits on unspecified dates.  (*Id.* ¶ 87.)  As to the *Owens* Suit, Great American acknowledged in a letter dated December 29, 2004 that its Umbrella Policy followed-form to the Chrysler Insurance Auto Dealer Enhancement Package in the Garage Coverage Policy, including to the Coverage E provision.  (*Id.* ¶ 88 and Ex. Y.)  Great American also stated as follows in the letter:  "Being 'follow-form' to [Chrysler Insurance] means that if [Chrysler Insurance] has coverage for the

loss then we do, but if [Chrysler Insurance] does not have coverage for the loss then neither do we.  Please advise us of the position taken by [Chrysler Insurance] for each of the captioned claims."  (*Id.*)  Great American took a similar position in regard to the *Price* Suit.  It again stated in a letter dated July 15, 2005 that "[b]eing 'follow-form' to [Chrysler Insurance] means that if [Chrysler Insurance] has coverage for the loss then we do, but if [Chrysler Insurance] does not have coverage for the loss then neither do we. . . .  Please advise send [*sic*] me a copy of any coverage position taken by [Chrysler Insurance]."  (*Id.* ¶ 89 and Ex. Z.)

Sonic did not make any allegations concerning Great American's initial response regarding the *Galura* Suit.  Sonic continued to provide Great American with information regarding the status of the three Underlying Suits up to and including in June 2010.  (*Id.* ¶ 90.)  In a letter dated June 17, 2010, Great American stated that it had "reopened" and was "investigating" the matter of its potential coverage of Sonic in regards to the three Underlying Suits.  (*Id.* ¶ 90 and Ex. AA.)

Sonic has asserted claims for declaratory relief and for violation of the NCUDTPA against Great American.  Sonic does not allege in the statement of its causes of action that Great American has breached a duty to defend in regards to the Underlying Suits.  Rather, Sonic merely asserts that "[c]overage for the Underlying Suits is provided by the Auto Dealer Enhancement Coverage under the Great American Umbrella Policy."  (*Id.* ¶ 116.)

### 2.    Timeliness of the Claims Against Great American

Great American also moves to dismiss on the basis of the applicable statute of limitations.  Great American asserts that because its coverage followed Chrysler Insurance's coverage, the statute of limitations analysis likewise is similar for both defendants.  The Court

18

agrees.  Great American sent letters on December 29, 2004 and July 15, 2005 which acknowledged coverage for the *Owens* and *Price* Suits if and only if the Chrysler Insurance coverage applied.  Chrysler Insurance already had denied coverage for the Underlying Suits under the Coverage E provision prior to the dates of the Great American letters.  The Great American letters, therefore, denied coverage for the *Owens* and *Price* Suits and triggered the four-year limitations period for a NCUDTPA claim.  *See Piles*, 653 S.E.2d at 185-86.  Sonic did not file this Complaint within the limitations period.  As to the *Galura* Suit, Sonic has not provided any facts which would suggest that its claim was timely.  The NCUDTPA claim must be dismissed.

Turning to the claim for declaratory judgment, Great American asserts that the North Carolina three-year statute of limitations for a breach of contract is applicable and was triggered by the denial letters.  However, it does not cite any controlling authority for that proposition. Sonic is seeking at this point only a declaration that coverage exists for the Underlying Suits. Sonic has not requested Great American to make payments under the Umbrella Policy because its liability in the Underlying Suits has not been established.  The Court will not dismiss the claim for declaratory relief against Great American.

For these reasons, Great American's Motion to Dismiss will be granted in part and denied in part.  The NCUDTPA claim against Great American is dismissed in its entirety.

**D.**   **Lumbermens' Motion to Dismiss**

Lumbermens issued a commercial excess liability policy to Sonic for the period of December 1, 2001 through December 1, 2002.  (Doc. 1 ¶ 51 and Ex. J.)  The Lumbermens Excess Policy provided coverage for a covered loss in excess of the liability of the designated

19

underlying insurance up to $25 million per occurrence and $25 million general aggregate.  (*Id.* ¶¶ 52, 55 and Ex. J at 16.)  The Great American Umbrella Policy was the designated underlying insurance policy in the Lumbermens Excess Policy.  (*Id.* ¶ 53 and Ex. J at 9, 14.)  Sonic tendered notice of the Underlying Suits to Lumbermens.  (*Id.* ¶ 94.)  Sonic alleges that Lumbermens has "failed to acknowledge coverage and refused to express a position on whether the underlying claims eventually would trigger coverage under the Lumbermens Excess Policy" as to the *Owens* and *Price* Suits.  (*Id.* ¶¶ 95-97.)

Sonic has asserted a claim for declaratory relief against Lumbermens.  Lumbermens has moved for dismissal on two bases.  First, Lumbermens argues that coverage under its Excess Policy is conditioned upon the exhaustion of the Great American Umbrella Policy.  Lumbermens relies on a policy provision which states that the Excess Policy does not cover a loss if the Great American policy did not cover the loss "for any reason other than exhaustion of an aggregate limit of liability by payment of claims."  (Doc. 1 Ex. J at 7.)  Lumbermens contends that because Great American has denied coverage for a reason other than the exhaustion of the payment limits, Sonic's loss is not covered by its policy and Sonic's claim for declaratory relief fails as a matter of law.  However, Lumbermen's argument fails because the Court will not dismiss the claim for declaratory relief against Great American as time-barred.  The Court has not determined yet whether Sonic will have coverage up to the limits of the Great American Umbrella Policy.  The Court, therefore, will not dismiss the claims for coverage under the Lumbermens' Excess Policy on the grounds that there will be no coverage, and therefore no exhaustion by payment, under the Great American policy.

Second, and alternatively, Lumbermens asserts that the claim for declaratory relief

against it is premature.  The Excess Policy had a "no action" clause which stated as follows:

> 1. No action shall lie against us unless, as a condition precedent thereto:
>
>> a. There shall have been full compliance with all the terms and conditions of this policy;
>>
>> b. The "Insured" shall have paid or have become legally liable to pay the amount of the limits of liability of the "Underlying Insurance"; and
>>
>> c. The "Insured's" legal obligation for damages shall have been finally determined.

(Doc. 1 Ex. J at 12.)  Lumbermens asserts that any action against it is premature because Lumbermens has not yet become legally obligated by virtue of a settlement or legal judgment.

Several courts have held that no action clauses do not bar an insured's claims for declaratory relief against the insurer, at least where coverage is denied by the insurer.  *See*, *e.g.*, *Eureka Fed. Sav. And Loan Ass'n v. Amer. Cas. Co. of Reading*, 873 F.2d 229, 233 (9th Cir. 1989) ("[C]ourts have [held] that no action clauses do not apply to bar declaratory actions that adjudicate issues of coverage and defense."); *Owens-Corning Fiberglas Corp. v. Allstate Ins. Co.*, 74 Ohio Misc. 2d 159, 660 N.E.2d 755, 760-62 (Ohio C.P. 1993) ([T]he 'no-action' clauses at issue do not bar declaratory actions filed by insureds concerning issues of coverage."); *W & J Rives, Inc. v. Kemper Ins. Group d/b/a Lumbermens Mut. Cas. Co.*, 374 S.E.2d 430, 434-35 (N.C. Ct. App. 1988); *cf. Haxton v. CNA Fin. Corp.*, Nos. 89-6072, 89-6116, 1990 WL 169650, at *1 (6th Cir. Nov. 2, 1990) (stating that no action clause barred claim for declaratory relief, but distinguishing cases where declaratory claim was allowed because the insurer denied coverage or refused to defend); *but see Batsakis v. Fed. Dep. Ins. Corp.*, 670 F. Supp. 749, 759-60 (W.D. Mich. 1987) (stating that no action clause barred both claims for declaratory and for monetary relief).

Lumbermens seeks to rebut this authority by distinguishing the *W & J Rives* decision. Lumbermens interprets *W & J Rives* as permitting the declaratory judgment suit to proceed only because the insured was suing on a duty to defend clause.  *Cf. Duke Univ.*, 384 S.E.2d at 41 ("The courts of this state [North Carolina] have consistently held that the 'no action' clause will not bar the insured's immediate suit against the insurer for breaching the duty to defend where the insurer unjustifiably refuses to defend the insured.").  Sonic does seek a declaration that Lumbermens has a duty to defend.  The *W & J Rives* court stated that if an insured could not seek declaratory judgment on the duty to defend until after the exhaustion of the underlying limit of liability by payment of claims, "then the duty to defend under [the] contract would arise only after [the insured's] need for the defense was past."  374 S.E.2d at 434.  However, contrary to Lumbermens interpretation of *W & J Rives*, the court made this comment about the duty to defend in regard to a different contractual provision, and not the no action clause.  In regard to the defense that the insured's claim was premature because the policy had a no action clause, the *W & J Rives* court simply stated that it was "quite proper" under North Carolina Declaratory Judgment Act to permit an insured to bring an action "to have the rights and relations between the insured and the insurers clarified."  *Id.* at 434-35.  Therefore, the Court reads *W&J Rives* to instruct that it is "proper" for Sonic to proceed with a declaratory relief claim against Lumbermens at this time.

In sum, this Court will not dismiss the claim for declaratory relief against Lumbermens on the basis that the claim is premature and violated the Excess Policy's no action clause.

**E.      Universal's Motion to Dismiss**

**1.      Allegations Against Universal**

Universal issued policies of insurance to Sonic which were effective from January 1,

2003 through January 1, 2004 and then from January 1, 2004 through January 1, 2005.  (Doc. 1

¶ 56 and Exs. K, L, M.)  Part 500 of the Universal Policies provided the following coverage

which Sonic alleges is relevant to the Underlying Suits:

> [Universal] will pay all sums the INSURED legally must pay as DAMAGES
> (including punitive DAMAGES where insurable by law) because of STATUTE
> AND TITLE E&O where such insurance is included in the declarations.
>
> * * *
>
> "STATUTE AND TITLE E&O" means any claim or SUIT filed against YOU,
> other than as a result of an OCCURRENCE or CUSTOMER COMPLAINT
> DEFENSE, by or on behalf of:
>
>> (a) a customer arising out of GARAGE OPERATIONS, because of an
>> alleged violation during the Coverage Part period, of any federal, state or
>> local:
>
> * * *
>
>> (2) truth-in-lending or truth-in-leasing law.

(*Id.* Ex. M at PAGEID 1869, 1871.)

Part 980 of the Universal Policies provided umbrella coverage to Sonic as follows:

>> WE will pay for LOSS, subject to the terms and conditions of this
> Coverage Part, in excess of:
>
>> (a) coverage provided in any UNDERLYING INSURANCE . . . .

(*Id.* Ex. M at PAGEID 1879.)  Underlying insurance in Part 980 included the coverage provided

by Part 500.  (*Id.* ¶ 61.)  Sonic also alleges that Universal had a duty to defend Sonic pursuant to

Part 980.  (*Id.* ¶¶ 64, 65.)

Sonic alleges generally that it provided notice about the Underlying Suits to Universal, but Sonic made specific allegations concerning only the notices which it provided to Universal regarding the *Owens* and *Price* Suits.  (*Id.* ¶¶ 100-05.)  Further, Sonic attached to the Complaint correspondence related to only the *Price* Suit.  (*Id.* Ex. BB.)  As to the *Price* Suit, in a letter dated February 28, 2005, Universal denied coverage to Sonic on the basis that there was no occurrence as defined in the Policies.  (*Id.* ¶ 101 Ex. BB.)  Universal stated that coverage would have been provided only by the Customer Complaint Defense, which provided lower coverage limits than the Statute and Title E&O provisions of the Policies, but that a claim under that provision was now untimely.  (*Id.* ¶¶ 101-03 & Ex. BB.)  Universal concluded that it would "not be able to provide any coverage for this suit per the policy provisions set out above."  (*Id.* Ex. BB.)  Finally, Sonic alleged upon information and belief that following notice of the *Owens* Suit, at an unspecified date, Universal also failed to acknowledge its coverage obligations under the Statute and Title E&O provision of its Policies.  (*Id.* ¶ 104.)  Sonic asserts claims against Universal for declaratory relief and breach of contract.

### 2.    Analysis of Universal's Motion to Dismiss

Beginning with the breach of contract claim, Sonic alleges that Universal breached its duty to defend Sonic in the *Price* and *Owens* Suits.[6]  The analysis of the timeliness of the breach of contract claim against Universal is similar to the analysis of the breach of contract claim against Chrysler Insurance.  Universal denied coverage as to the *Price* Suit on February 28,

---

[6] The Complaint cannot be fairly read to assert any claims by Sonic against Universal as to the *Galura* Suit.  Sonic does not allege specifically that it provided Universal with notice of the *Galura* Suit, that the Universal Policies provided coverage to Sonic for the *Galura* Suit, or that Universal breached a duty to defend Sonic in the *Galura* Suit.

2005.  This denial of coverage occurred within Ohio's fifteen-year limitations period, *see* Ohio Rev. Code § 2305.06.  Accordingly, Sonic's claims for defense costs incurred in the *Price* Suit after February 28, 2005 and before April 7, 2005, the effective date of Ohio's borrowing statute, *see* Ohio Rev. Code § 2305.03, are timely.

On and after April 7, 2005, pursuant to the Ohio borrowing statute, the Court must consider whether the claim is timely under North Carolina law.  North Carolina has a three-year statute of limitations for breach of contract.  N.C. Gen. Stat. § 1-52.  The period for breach of an insurance contract begins to run when the insurer denies coverage.  *Wm. C. Vick Const. Co.*, 52 F. Supp. 2d at 594.  Additionally, under North Carolina law, the "duty to defend under the liability policy is a continuing obligation to defend throughout the course of the underlying litigation."  *Duke University*, 384 S.E. 2d at 41.  "Each legal expenditure incurred as a result of the insurer's refusal to defend creates a new right in the insured to recover such legal expenditures" and "an insured has three years from the date each legal expense is incurred to bring suit against the insurer for its refusal to defend the insured."  *Id.*  Analyzing these various statutes together, Sonic's claims against Universal based on Universal's failure to defend the *Price* Suit between April 7, 2005 and before October 15, 2007 are untimely.  Sonic's claims based on Universal's failure to defend on and after October 15, 2007 are timely.

Sonic has not alleged any dates in regards to its allegation that Universal also failed to acknowledge coverage for the *Owens* Suit under the Statute and Title E&O provisions of its Policies.  Nonetheless, the analysis of the timeliness of the *Owens* Suit claim tracks that of the *Price* Suit claim.  Sonic's claim against Universal is untimely to the extent that Universal breached the duty to defend between April 7, 2005 and before October 15, 2007 are untimely.

25

Sonic's claims based on Universal's failure to defend on and after October 15, 2007 are timely.

Turning to the claim for declaratory judgment, Universal does not make any specific argument for dismissal of the claims.  The declaratory judgment claim will be permitted to proceed against Universal for the same reasons that the declaratory judgment claims against the other defendants are proceeding.

In sum, the Court will grant in part and deny in part Universal's motion.  Sonic's breach of contract claim is dismissed to the extent that Sonic seeks reimbursement of defense costs incurred in the *Owens* and *Price* Suits between April 7, 2005 and October 14, 2007.

## IV.     CONCLUSION

For the foregoing reasons, and on the bases set forth above, Chrysler Insurance's Motion to Dismiss (doc. 31) is **GRANTED IN PART AND DENIED IN PART**.  Sonic's breach of contract claim premised on the alleged breaches of the duty to defend is dismissed to the extent that Sonic seeks reimbursement for defense costs incurred in the Underlying Suits between April 7, 2005 and October 14, 2007.  Likewise, Sonic's claims for bad faith and for violation of the NCUDTPA are dismissed.

Great American's Motion to Dismiss (doc. 32) is **GRANTED IN PART AND DENIED IN PART**.  The NCUDTPA claim against Great American is dismissed in its entirety.

Lumbermens' Motion to Dismiss (doc. 33) is **DENIED.**

Universal's Motion to Dismiss (doc. 36) is **GRANTED IN PART AND DENIED IN PART**.  Sonic's breach of contract claim is dismissed to the extent that Sonic seeks reimbursement of defense costs incurred in the *Owens* and *Price* Suits between April 7, 2005 and October 14, 2007.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court

27