IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SONIC AUTOMOTIVE, INC., | |
| Plaintiff, | Civil Action No: 1:10–cv-00717-SJD |
| vs. | JUDGE SUSAN J. DLOTT |
| CHRYSLER INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LUMBERMANS MUTUAL CASUALTY, d/b/a LUMBERMANS MUTUAL GROUP and UNIVERSAL UNDERWRITERS INSURANCE COMPANY | MAGISTRATE KAREN LITKOVITZ |
| Defendants. | |

**DEFENDANT, CHRYSLER INSURANCE COMPANY'S STATEMENT OF PROPOSED UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**

Defendant, CHRYSLER INSURANCE COMPANY (herein referred to as "CIC"), by and through its undersigned attorneys, submits this Statement of Undisputed Material Facts pursuant to Fed.R.Civ.P. 56, and Standing Order Governing Civil Motions for Summary Judgment of the Hon. Susan J. Dlott, U.S.C.D.J. in support of its Motion for Summary Judgment.

1. Plaintiff's complaint asserts a declaratory action whereby plaintiff, Sonic Automotive, Inc. ("Sonic"), an owner of numerous automobile dealerships, alleges to be an insured entity through a Garage Coverage insurance policy issued by defendant, CIC. (*See* Sonic's Complaint, *supra* (ECF #1)).

2. Sonic was named as a defendant in two (2) class action lawsuits referred to as *Galura & Owens/Price*, both of which have since been resolved by settlement.[1] (*See id.*; Complaint Exhs. A-D).

3. Sonic alleges that CIC breached the insuring agreement contract by failing to defend and indemnify Sonic; and Sonic is therefore entitled to recover all of the defense and indemnity costs it incurred in defending itself from CIC. (*See id.*, page 2, *supra.*).[2]

4. CIC asserts that it fully complied with the insurance policy, and is not liable for any indemnity or defense reimbursement to Sonic. (*See* CIC Answer, ECF #73).

### The Subject Policy

5. The subject CIC Garage Coverage insuring agreement, policy no. CPP006000, was in effect from December 1, 1999 to January 1, 2003. (*See* Complaint, Exhs. E-H).

6. The policy's General Garage Coverage form, provides standard ISO-form liability coverage, in relevant part, as follows:

> SECTION II – LIABILITY COVERAGE:
> A. Coverage
> 1. "Garage Operations" – Other Than Covered "Autos"
>
> a. We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident"

---

[1] The first class action, *Galura*, represents *Galura v. Sonic Automotive, Inc.*, Case No. 02-006981C0-041, filed in the Circuit Court for the Thirteenth Judicial Circuit in and For Hillsborough County, Florida. The second action, *Owens/Price*, represents a consolidation of two actions: (a) *Owens v. Automobile Protection Corporation, et al.*, Civil Suit No. 04-CP46-2997, originally filed on November 15, 2004, in the Court of Common Pleas for York County, South Carolina ("*Owens*"); and (b) *Price v. Automobile Protection Corporation*, Case No. 05-CVS-00157, originally filed on February 14, 2005, in the General Court of Justice, Superior Court Division, of Lincoln County, North Carolina ("*Price*") (*See Id.*)

[2] Sonic alleges it incurred $11,003,992 in payments to settle the *Galura* and *Owens/Price* matters. Sonic alleges it paid in excess of $8,885,739 in payments to defend the *Galura* and *Owens/Price* matters. The parties have stipulated that this motion shall not address the substantiation or reasonability of these amounts. (See ECF # 141). Rather, this motion is limited to the question of coverage, and the extent of coverage.

438988                                                                 2

and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".

We have the right and duty to defend any "insured" against a "suit" asking for these damages.  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance - "Garage Operations" - Other Than Coverage "Autos" has been exhausted by payment of judgments or settlements.

(*See id.,* Complaint Exh. H; Exhibit #19 of Deposition of Sonic's Assistant General Counsel, Tim Sparks, ("Sparks #19") annexed as Exhibit C to Certification of Alan R. Levy, Esq.).

7. In addition, the CIC policy includes two (2) endorsements which provide additional types of coverage which are at issue in this case: (1) coverage for "TILA"-related "errors or omissions" claims a/k/a "Coverage E" of the Auto Dealer Enhancement Package; and, (2) coverage for "Customer Complaint" claims under the Customer Complaint Endorsement ("CCE").  (*See id.;* Complaint Exh. H; Sparks #20 & #21).

8. CIC's Auto Dealer Enhancement Package endorsement provides the following "TILA"-related "errors or omissions" coverage:

> **PART I. - WE WILL PAY:**
>
> Section II - Liability Coverage is extended to include coverage for all sums an "insured" legally must pay as "damages" arising from an "occurrence" because of an *alleged or actual negligent act or "error or omission" by an "insured"* occurring during the policy period of this policy and resulting from:
>
> …
>
> Coverage E. Truth-in-Lending, Truth-in-Leasing Errors and Omissions – a civil violation of any federal, state or local statute that regulates specific disclosures required to complete:
>
> 1. Consumer financing agreements.
> 2. Consumer leasing agreements.

**PART IV – ADDITIONAL DEFINITIONS:**

5. "Errors and Omissions" means a mistake, oversight, miscalculation, or clerical error, which occurs *as an unintentional exception to the standard practice or procedure of the insured*.

(*See id.,* Complaint Exh. H; Sparks #21).

9. The "TILA" coverage is subject to the following policy limit conditions:

   Limit of Insurance – $1,000,000 damages for any one claim and $2,000,000 aggregate for all claims.

   No limit of insurance cumulates from year to year or period to period.

   (*See id.* Complaint Exh. H; Sparks #21).

10. The CCE coverage is limited to $25,000 per claim (and $100,000 aggregate) which includes both damages *and* defense costs. (*See id.,* Complaint Exh. H; Sparks #20).

**The Underlying *Galura* and *Owens/Price* class action lawsuits**

11. Plaintiff, Sonic, was named as a defendant in two (2) class action lawsuits (*Galura* & *Owens/Price*) arising from the sale of an alleged anti-theft product to its customers known as Etch. (*See* Complaint Exhs. A-D).

12. Both the *Galura* and *Owens/Price* class action plaintiffs alleged that Sonic engaged in a pattern and practice of fraudulently selling its customers an essentially worthless after-market product known as "Etch" without providing proper disclosure to its customers. (*See id.*).

13. Both the *Galura* and *Owens/Price* lawsuits allege that Sonic initiated its pattern and practice on about December 5, 1997. (*See* Complaint, Exh. A at ¶ 37; Complaint, Exh. C at ¶ 29).

14. Among the claims alleged in the *Galura* complaint were:

- Sonic's executives, supervisors, managers and employees orchestrated a scheme to deceive and "push on its customers," through misleading and false documents, the Etch product, in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") (*See* Complaint, Exh. A at ¶ 28).

- Sonic engaged in a policy to withhold the actual price of Etch and other insurance products by designing and operating a consumer system that omitted these terms from customer contracts. (*See id.* at ¶ 91).

- Sonic trained its employees not to disclose to customers the cost of Etch and other insurance products. (*See id.* at ¶ 85).

15. The *Owens/Price* plaintiffs alleged nearly identical factual allegations as those alleged by the *Galura* plaintiffs, such as:

    - Sonic misstated and withheld the actual price of Etch and other insurance products; that such actions were intentional and willful; that such actions were done at the highest level of management; and, that this constituted fraudulent, illegal and deceptive trade practices. (*See* Complaint, Exh. C at ¶¶ 1-5).

    - Sonic engaged in a pattern and practice of deceptively selling the Etch product. (*See id.*).

    - Sonic's actions were in violation of South Carolina Regulation of Manufacturers, Distributors and Dealers Act, S.C. Code Ann. § 56-15-10 *et. seq*. (Count I); rescission (Count II); breach of contract (Count III); unjust enrichment (Count IV); and the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") (Count V). (*See id.* at ¶6).

- Sonic submitted deceptive contracts and documents to financing lenders and wrongfully obtained increased income from financing charges. (*See id.* at ¶ 71).

- Sonic derived revenues and commissions from "packing" or "stuffing" the Etch product into financing agreements with the Claimants and thousands of class members. (*See id.* at ¶ 72).

- Sonic failed to disclose the price of Etch to consumers, by printing Etch forms with the price field left blank for the customer to sign. (*See id.* at ¶ 75).

- Sonic engaged in unfair or deceptive trade practices through deception, fraud, misrepresentation and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the purchase of the products. (*See id.* at ¶ 131).

**CIC's Claims Handling and Developments of *Galura* and *Owens/Price***

16. On or about November 5, 2002, CIC agreed to defend Sonic under the "TILA" coverage under a full reservation of rights. CIC also consented to Sonic's selection of the law firm of Broad & Cassel to defend Sonic. (*See* Complaint, Exh. N; Sparks #1).

17. On or about March 24, 2003, Sonic notified CIC that in addition to retaining the law firm of Broad & Cassel to defend Sonic, Sonic also retained the additional law firm of William & Connolly. (*See* Sparks #4; Deposition of Sonic's Assistant General, Tim Sparks, annexed as Exhibit A to Levy Certification at pp. 79-81; Deposition of Sonic's Rule 30(b)(6) witness, Tim Hallice, annexed as Exhibit B to Levy Certification at pp. 107-110).

18. On or about April 24, 2003, CIC notified Sonic that CIC had already consented to Sonic's selection of the law firm of Broad & Cassel, and CIC would not consent to the

retention of the additional law firm of William & Connolly; hence, the costs of William & Connolly would be at Sonic's expense. (*See* Complaint, Exh. X; Sparks #5).

19. On or about May 13, 2004, following attempts by the *Galura* plaintiffs to amend their complaint, CIC issued a supplemental reservation of rights to Sonic stating that there would be no coverage relating to allegations against Sonic for its "deliberate and standard business practice." In addition, CIC referred Sonic to CIC's Customer Complaint Endorsement's coverage. (*See* Complaint, Exh. P; Sparks #6).

20. On or about December 6, 2004, after receiving tender of the *Owens* complaint, CIC agreed to defend Sonic under the CCE coverage under a full reservation of rights. CIC also consented to Sonic's selection of the law firm of James McElroy & Diehl to defend Sonic. (*See* Complaint, Exh. R; Sparks #7).

21. On or about March 8, 2005, after receiving tender of the *Price* complaint (which "mirrored" the *Owens* complaint), CIC agreed to defend Sonic under the CCE coverage under a full reservation of rights. CIC also consented to Sonic's selection of the law firm of James McElroy & Diehl to defend Sonic. (*See* Complaint, Exh. S; Sparks #8).

22. Sonic never requested that CIC approve the law firm of Williams & Connolly in the defense of *Owens/Price*. (*See* Hallice Deposition at pp. 110-112).

23. On June 3, 2005, the Hon. Vivian C. Maye of the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County, granted the *Galura* plaintiffs' Motion for Class Certification. (*See* Sparks #11A). In that decision, Judge Maye rendered the following findings:

> The class action lawsuit was originally filed on December 30, 2002 by a number of named plaintiffs who alleged, among other things, that Sonic, through deceptive and unfair trade practices, orchestrated a scheme to deceive customers out of millions of

> dollars by including undisclosed glass etch products into purchases of vehicles from its Florida dealerships. (*See id.* at Paragraph 4).
>
> Based on the alleged pattern and practice of deceptive and unfair trade practices, which are supported by the record evidence filed to date, the Court finds that common issues of law and fact are present and predominate over any individualized issues that may exist, which support class certification." (*See id.* at Paragraph 52).
>
> Here, the claims alleged by the named representatives individually and on behalf of the proposed class they seek to represent are identical. Such claims are based on Sonic's alleged common course of conduct designed to mislead and deceive the Named Plaintiffs and putative class members. Thus, where, as here, the suit involves a pattern and practice of deceptive and unfair business practices, class action treatment is particularly appropriate. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) (upholding class certification) (*See id.* at Paragraph 70).
>
> The Plaintiffs' [Florida Deceptive and Unfair Trade Practices Act] claim involves an alleged scheme and conspiracy by Sonic, through uniform misrepresentations, actionable omissions, and misleading disclosures, to deceive the proposed class as to the price of the APCO Etch product and its actual benefits. (*See id.* at Paragraph 85).

24. On or about July 21, 2005, CIC advised Sonic, that as a result of Judge Maye's findings, the *Galura* claims did not fall within the terms of the "TILA", and that if the findings were affirmed, the only coverage that could be available would be Sonic's Customer Complaint Endorsement (CCE) with a policy limit of $25,000 coverage, or no coverage at all.  Nevertheless, under a complete reservation of rights, CIC would continue to defend Sonic on the *Galura* claim, pending the outcome of the appeal under the "TILA" coverage.  (*See* Complaint, Exh. Q; Sparks #11).

25. On April 25, 2007, the Florida Court of Appeals for the Second District affirmed the Order of the lower court in *Galura*.  (*See* Sparks #12A).  In its decision, the *Galura* appellate court found:

> The complaint alleges that Sonic, through deceptive and unfair business practices, orchestrated a scheme to "stuff" or "pack" Etch into vehicle sales transactions without proper disclosure to customers."

438988

8

      *Sonic Automotive Inc. v Galura*, 961 So.2d 961, 963-64 (Fla 2 DCA, 2007). (*See also* Sparks #12A).

26. Neither the lower court nor the appellate court held that the claims against Sonic were based on negligent act(s) or "error or omission(s)" committed by Sonic in the sale of "Etch." (*See* Sparks #11A & #12A).

27. Following the appellate court decision, on or about June 6, 2007, CIC advised Sonic that Sonic's claim was not covered by the CIC policy, based on the allegations contained in the *Galura* Complaint, the trial court's certification order and Appellate Court decision. Therefore, CIC advised it would no longer provide any defense or indemnification to Sonic for the *Galura* class action.  CIC also stated even if the CCE endorsement provided coverage, despite its exclusions, the coverage limits of $25,000 had already been exhausted by payment of legal fees to Broad and Cassel. (*See* Sparks #12; Affidavit of Jim Smith, annexed as Exhibit D to Levy Certification).

28. On or about October 5, 2007, after receiving several Broad & Cassel invoices in the *Galura* matter incurred after the June 6, 2007 letter, CIC notified Sonic and Broad & Cassel, that pursuant to CIC's June 6, 2007 letter, no future invoices would be paid by CIC.  (*See* Sparks #13, Sparks Deposition at pp. 134-135).

29. Following the October 5, 2007 letter, neither Sonic nor Broad & Cassel forwarded any further *Galura* invoices to CIC for payment.  (*See* Sparks Deposition at pp. 134-135, Hallice Deposition at pp. 184-185).

30. On or about March 1, 2011, Sonic entered into a class action settlement in the *Galura* matter, and on or about April 9, 2012, Sonic entered into a class action settlement in the *Owens/Price* matter.  (*See* Sparks #24; Sparks #25; Sparks Deposition at pp. 166-167, 185-186; Hallice Deposition at pp. 225-233).

31. In a mediation statement dated January 28, 2011, in the *Galura* matter, Sonic's counsel argued that the *Galura* plaintiffs have "never asserted a claim under TILA in any complaint," and has no valid cause of action under TILA. (*See* Sparks #23; Sparks Deposition at pp. 153-160).

**Sonic's Silence/Acquiescence to CIC's Claims Determinations**

32. Sonic's first objection to any of CIC's claims determinations was in a letter dated June 7, 2010. (*See* Complaint, Exh. T; Sparks #14; Sparks Deposition at pp. 82-88, 92-94, 114, 116-17, 119-121, 134-35; Hallice Deposition at pp. 53-56, 94-97, 100-102, 110-112, 117-118, 171).

33. Prior to June 7, 2010, Sonic never once objected to any of CIC's claims determinations relating to either the *Galura* or *Owens/Price* claims made from 2002 to 2010. (*See id.*).

34. Prior to June 7, 2010, Sonic never objected to CIC's decision not to pay the costs of Williams & Connolly for the *Galura* matter which was first made on April 24, 2003. (*See id.*).

35. Prior to June 7, 2010, Sonic never once requested CIC to pay for any bills/invoices from the law firm of Williams & Connolly for the *Owens/Price* matter. (*See id.*).

36. Prior to June 7, 2010, Sonic never once provided any bills/invoices from the law firm of Williams & Connolly to CIC. (*See id.*).[3]

37. Prior to June, 2010, Sonic never objected to CIC's decision provide CCE coverage to the *Owens/Price* suits which was first determined on December 6, 2004. (*See id.*).

---

[3] In fact, Sonic first provided copies of the Williams & Connolly bills/invoices when served as supplemental discovery responses in this litigation on April 20, 2012.

438988                                   10

38. Prior to June 2010, Sonic never once requested CIC to pay for any bills/invoices from the law firm of James McElroy & Diehl to CIC, or requested that these invoices be reimbursed by CIC.  (*See id.*).

39. Prior to June 2010, Sonic never once provided any bills/invoices from the law firm of James McElroy & Diehl to CIC.  (*See id.*).[4]

40. From 2002 – 2010, Sonic never once disputed, objected, complained, criticized or responded to a single one of CIC's coverage determinations prior to June 7, 2010.  (*See id.*).

41. From 2002 – 2007, CIC paid a total of $200,541.13 in the defense of Sonic relating to the underlying *Galura* matter.  (*See* CIC's Answers to Interrogatories, Response to Plaintiff's Document Requests & CIC's "Payment Listing" (CIC 00159) annexed as Exhibit E to Levy Certification).

                Respectfully submitted,

                **___/S/___JOHN C. ALBERT___**
                John C. Albert (0024164)
                500 S. Front St., Suite 1200
                Columbus, OH 43215-7631
                614-229-4528; F 614-229-4559
                Jalbert@cbjlawyers.com
                *Trial Attorney for Defendant,*
                *Chrysler Insurance Co.*

---

[4] In fact, Sonic first provided copies of the James McElroy & Diehl bills/invoices when served as supplemental discovery responses in this litigation on April 20, 2012.

438988              11

OF COUNSEL:

CRABBE BROWN & JAMES, LLP
500 S. Front St., Suite 1200
Columbus, OH 43215-7631
614-228-5511; F 614-229-4559

BUCKLEY & CURTIS, P.A.
Alan R. Levy, Esq. (AL B 0722)
Michael B. Buckley, Esq. (MB B 7357)
225 Broadway, Suite 2600
New York, NY 10004
212-514-7400; F 212-514-7404
CHRYSLER INSURANCE COMPANY
f/k/a DAIMLERCHRYSLER INSURANCE COMPANY & DCFS TRUST

### CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2013, I electronically filed the foregoing **DEFENDANT, CHRYSLER INSURANCE COMPANY'S STATEMENT OF PROPOSED UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56** with the Clerk of Court using the Electronic Filing System which will send notification of such filing to all counsel.

                /s/  JOHN C. ALBERT
                JOHN C. ALBERT (0024164)