IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Sonic Automotive, Inc., | : | |
| | : | Case No. 1:10-cv-717 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | Order on Motions for Summary |
| Chrysler Insurance Company, *et al.*, | : | Judgment |
| | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff Sonic Automotive, Inc.'s Motion for Partial

Summary Judgment (Doc. 147), Defendant Great American Assurance Company's Motion for

Summary Judgment (Doc. 145), and Defendant Chrysler Insurance Company's Motion for

Summary Judgment (Doc. 148).  Sonic Automotive, Inc. ("Sonic") has sued its insurers, Chrysler

Insurance Company ("Chrysler Insurance") and Great American Assurance Company ("Great

American"), for indemnification and defense costs arising from third-party lawsuits against it.

Sonic, Chrysler Insurance, and Great American now have moved for adjudication of the merits

of the case, each in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For

the reasons that follow, the Court will **DENY** partial summary judgment to Sonic, but **GRANT**

summary judgment to Chrysler Insurance and to Great American.

I.      **BACKGROUND**

This Court's Standing Order Governing Civil Motions for Summary Judgment

("Standing Order") requires a party moving for summary judgment to file a statement of

proposed facts supported by specific citations to an affidavit, deposition, or other item of

evidence.  The Standing Order further requires the opposing party to admit or deny each

proposed fact.  Denials must be supported with a specific citation to an affidavit, deposition, or

1

other item of evidence.  Proposed facts not properly denied are deemed admitted.  The following

facts are undisputed pursuant to the parties' Proposed Undisputed Facts (Docs. 145-1, 148-1, and

149) and the Responses thereto (Docs. 158-1, 160-1, 163-1, and 164-7), except where otherwise

specifically noted.

## A.    Parties and Insurance Policies

### 1.    Plaintiff Sonic Automotive, Inc.

Sonic owns automobile dealerships that sell and lease automobiles in various locations

across the country.  Sonic arranges for financing for the vehicles it sells and leases.  Customers

are provided with financing or leasing agreements that disclose (or are supposed to disclose) all

of the items, including vehicle options, that are being financed.

### 2.    Defendant Chrysler Insurance

Chrysler Insurance issued Sonic three insurance policies known as garage liability

policies which provided coverage to Sonic from December 1, 1999 to January 1, 2003.  The

Chrysler Insurance Policies included Auto Dealer Enhancement Package Endorsements with

coverage for certain violations of truth-in-lending statutes in what are referred to herein as the

TILA Provisions.[1]  The TILA Provisions stated in relevant part as follows:

**PART I – WE WILL PAY:**

Section II - Liability Coverage is extended to include coverage for all sums an
"insured" legally must pay as "damages" arising from an "occurrence" because of
an alleged or actual negligent act or "error or omission" by an "insured" occurring
during the policy period of this policy and resulting from:

\* \* \*

Coverage E. Truth-in-Lending, Truth-in Leasing Errors and Omissions - a civil
violation of any federal, state or local statute that regulates specific disclosures
required to complete:

---

[1]  The term TILA is an abbreviation for the federal Truth in Lending Act, 15 U.S.C. § 1640.

1. Consumer financing agreements.
2. Consumer leasing agreements.

* * * *

**PART IV – ADDITIONAL DEFINITIONS:**

5.  "Errors and Omissions" means a mistake, oversight, miscalculation or clerical error, which occurs as an unintentional exception to the standard practice or procedure of the insured.

* * * *

8.  "Occurrence" means all "claims" and/or "suits" caused by one or more "insureds" where the loss is the result of an act or repeated acts that are substantially the same and that gives rise to a single or series or similar "claims" and/or "suits."

(Doc. 147-1 at PageID 5122, 5123.).  The TILA Provisions in the Chrysler Insurance Policies provided Sonic with $1,000,000 in coverage for damages for each claim, subject to a $2,000,000 aggregate limit.  (*Id.* at PageID 5122.)  The TILA Provisions obligated Chrysler Insurance to cover the cost of defending any claim against Sonic potentially within the TILA Provisions, "even if the allegations . . . are groundless, false or fraudulent."  (*Id.*)  Chrysler Insurance's duty to defend any suit ended only "when the Limit of Insurance stated in this endorsement has been exhausted by payment of 'claims' and/or 'suits.'"  (*Id.*)  Finally, the Auto Dealer Enhancement Packages contained provisions referred to as the Fraudulent Conduct Exclusions which barred coverage for "[d]ishonest, malicious, fraudulent, criminal, deceptive, malicious [*sic*] or intentional act or omission."  (*Id.* at PageID 5124.)

The Chrysler Insurance Policies also contained Customer Complaint Endorsements which stated in relevant part as follows:

We will pay all sums an "insured" legally must pay as damages arising from an "occurrence" because of a "customer complaint suit" during this policy period.

> We have the right and duty to investigate or defend any "customer complaint suit". We will investigate or defend even if any of the allegations of the "claim" and/or "suit" are groundless, false or fraudulent. Our duty to defend ends when the Limit of Insurance stated in this endorsement has been exhausted. We may investigate and settle any "claim" and/or "suit" as we consider appropriate.

(*Id.* at PageID 5125.) A "customer complaint suit" was defined to mean "a 'claim' or 'suit' against you by or on behalf of your customer that results from the leasing or sale of your product to the customer, damage to your product or work you performed for your customer." (*Id.*) The Customer Complaint Endorsements did not apply to "'[c]laims' and/or 'suits' due to your violation of . . . [a] truth-in-lending or truth-in-leasing law." (*Id.* at PageID 5126.) They also did not apply to cover fraudulent or intentional acts or omissions. (*Id.*) The limits under the Customer Complaint Endorsements were $25,000 per claim or suit and $100,000 aggregate, including both damages and defense costs. (*Id.* at PageID 5125.)

### 3.  Defendant Great American

Great American issued an umbrella policy to Sonic effective for the period of December 1, 2001 through January 1, 2003. The Great American Policy "followed form" to the final Chrysler Insurance Policy and provided the same coverage. It attached excess of the last Chrysler Insurance Policy. (*Id.* at PageID 5132.) It provided limits of $25 million per occurrence and $25 million aggregate. (*Id.* at PageID 5129.)

## B.  The Underlying Lawsuits

### 1.  The *Galura* Action

Sonic was named as a defendant in two actions ("the Underlying Suits") for which it sought coverage under the Chrysler Insurance and the Great American Policies. The *Galura* action was filed on December 30, 2002 in the Thirteenth Judicial Circuit in and for Hillsborough

County, Florida as: *Virginia Galura, et al. v. Sonic Automotive, Inc.*  The First Amended

Complaint in *Galura* described the nature of the action as follows:

> This is a claim under the Florida Deceptive and Unfair Trade Practices Act, F.S.
> section 501.201, et seq.  This action is brought by motor vehicle purchasers,
> individually and on behalf of other vehicle purchasers in the State of Florida
> whose sale and credit documents failed to disclose the actual cost of various
> insurance products stuffed into their sales contracts.  Their contracts also
> contained charges for an anti-theft insurance [Etch] product sold exclusively by
> Sonic through an arrangement with a third-party insurer.  As a result, plaintiffs
> and the customers they represent suffered hundreds of thousands of dollars in
> excess costs and finance charges.

(Doc. 146-4 at PageID 4752–53.)  The *Galura* plaintiffs alleged that Sonic sold Etch products

knowing them to be "largely valueless, ineffective against vehicle theft and unconscionably

overpriced."  (*Id.* at PageID 4775.)  They alleged one count for relief pursuant to the Florida

Deceptive and Unfair Trade Practices Act ("FDUPTA").  (*Id.* at PageID 4774–76.)  As part of its

FDUPTA allegations, the *Galura* plaintiffs alleged that Sonic's practices were unfair or

deceptive because they violated the Truth-in-Lending Act, 15 U.S.C. § 1640(e) and the Florida

Retail Installment Sales Act ("Florida RISA"), Florida Statutes chapters 520 and 521.  (*Id.* at

PageID 4776.)

On June 3, 2005, the *Galura* court certified a class of "all customers who, on or after

December 30, 1998, purchased or leased from a Sonic dealership in the State of Florida a vehicle

that included an APCO [E]tch product as part of the transaction."  (Doc. 146-6 at PageID 4828.)

Upon appeal, that certification order was reversed in part insofar as the appellate court ordered

that the trial court should exclude from the class customers who received a refund for their Etch

purchase and customers who purchased the Etch product on or after April 23, 2002.  (Doc. 162-3

at PageID 7855–57.)  Based on Florida Statutes revised as of April 23, 2002, the Etch product

and related activities fell within the expanded definition of motor service agreements under Florida law, and as such, were excluded from the provisions of the FDUPTA.  (*Id.*)

The parties in the *Galura* action entered into a settlement agreement on or about March 1, 2011.  (*Id.* at PageID 7760–81.)  In the recital portion of the settlement agreement, the parties agreed that the class plaintiffs had "alleged that Sonic was liable to class members under FDUTPA for the sale of Etch in a deceptive and unfair manner in violation of state and federal law, including Florida's [RISA] and the federal [TILA]."  (*Id.* at PageID 7760.)  Sonic, however, denied any wrongdoing and did not admit fault.  (*Id.* at 7761.)  The agreement defined the settlement class as "[a]ll purchasers of vehicles from Sonic Automotive, Inc.'s car dealerships in Florida that included an APCO etch product between December 30, 1998, and April 22, 2002."  (*Id.* at PageID 7762.)

### 2.    The *Owens/Price* Action

The *Owens* case was initially filed in York County, South Carolina at case number 04-CP-46-2997 prior to December 1, 2004.  (Doc. 164-1 at PageID 8076.)  The *Price* case was initially filed in Lincoln County, North Carolina at case number 5CV00157 prior to March 2, 2005.  (*Id.* at PageID 8080.)  *Owens* and *Price* were consolidated and a Consolidated and Amended Class Arbitration Demand was filed before the American Arbitration Association on or about October 14, 2005.  (Doc. 146-5 at PageID 4779–07.)  The *Owens/Price* plaintiffs alleged that Sonic marketed and sold the Etch product as a mandatory add-on.  (*Id.* at PageID 4780.)  The plaintiffs alleged that Sonic "in a uniform classwide practice provided consumers with forms with blank prices thus allowing them to 'pack' and 'stuff' in the [Etch] product at exorbitant prices" and that "[t]he price charged to [plaintiffs] for Etch was not disclosed in any of the transaction documentation provided to the consumer."  (*Id.*)  The Arbitration Demand included

claims for (1) violation of the South Carolina Regulation of Manufacturers, Distributors, and

Dealers Act ("S.C. Dealers Act"), S.C. Code §§ 56-15-10 *et seq.*; (2) rescission to void Etch

contracts and unlicensed insurance products; (3) breach of contract; (4) unjust enrichment; and

(5) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("N.C. UDTPA"),

N.C. Gen. Stat. § 75-1.1 *et seq.* (*Id.* at PageID 4797–02.) The Arbitration Demand did not

include a separate claim for violation of federal TILA or any similar state truth-in-lending

statute.

A settlement of the *Owens/Price* claims was judicially approved by the Superior Court of

the County of Craven, North Carolina on or about August 23, 2012. (Doc. 162-3 at PageID

7784–90.) The settlement class was defined as "all customers who, on or after November 15,

2000, purchased or leased from a Sonic dealership a vehicle with the Etch product as part of the

transaction but not including customers who purchased or leased such vehicles from Sonic

dealerships in Florida." (*Id.* at PageID 7785–86.) In the recitals of the settlement agreement, the

parties stated as follows:

> Plaintiffs have asserted causes of action against Sonic based on alleged common
> law and statutory violations, including, *inter alia,* violation of North Carolina's
> Unfair and Deceptive Trade Practices Act and the federal Truth in Lending Act,
> arising from the sale at Sonic-owned dealerships of two products provided by
> Automobile Protection Corporation ("APCO"): (1) a vehicle service contract or
> "VSC" product, and (2) a window etching product ("Etch").

(*Id.* at PageID 7792.) Sonic, however, denied all wrongdoing and did not admit fault. (*Id.* at

PageID 7793.)

## C.    Coverage for the Underlying Suits

### 1.    Chrysler Insurance's Response to Underlying Suits

In a November 5, 2002 letter, Chrysler Insurance initially agreed to provide coverage to

Sonic for *Galura* under the TILA Provisions in the Auto Dealer Enhancement Package

Endorsements.  (Doc. 162-2 at PageID 7233–35.)  Chrysler Insurance reserved the right,

however, to deny coverage under the policy exclusions if the exclusions became applicable.  (*Id.*)

Finally, Chrysler Insurance consented to Sonic's selection of the law firm Broad & Cassel for its

defense.  (*Id.*)  In a letter dated March 24, 2003, Chrysler Insurance stated the following:

> Plaintiffs allege only a Violation of the Florida Deceptive and Unfair Trade
> Practices Act and Unjust Enrichment.  Cited as examples of deceptive business
> practices are the violation of the Federal Truth-in-Lending Act and the Florida
> Motor Vehicle Retail Sales Finance Act, which triggers coverage under the
> Garage Coverage Form, Auto Dealer Enhancement Package, Endorsed to Policy
> CPP0006000, subject to the following conditions.

(Doc. 162-2 at PageID 7240.)  Chrysler Insurance also again reserved the right to deny coverage.

(*Id.*)

On or about March 24, 2003, Sonic notified Chrysler Insurance that it had retained the

law firm of William & Connolly to act as primary defense counsel for Sonic, in addition to

representation by Broad & Cassel.  (*Id.* at PageID 7250.)  On or about April 24, 2003, Chrysler

Insurance informed Sonic that it would not pay costs related to Williams & Connolly because it

already had agreed to accept Broad & Cassel as the defense firm.  (Doc. 1-52 at PageID 1929.)

Chrysler Insurance also included reservation of rights language.  (*Id.*)

On May 13, 2004, Chrysler Insurance sent a supplemental reservation of rights letter to

Sonic to "follow on attempt by [*Galura*] Plaintiffs to Amend [*sic*] the litigation."  (Doc. 1-44 at

PageID 1898.)  Chrysler Insurance noted that Plaintiffs "allege[d] a violation of the Florida

Unfair Trade Practices Act and the Motor Vehicle Sales Finance Act."  (*Id.*)  Chrysler Insurance

referenced its Customer Complaint Endorsement coverage for the first time in this letter.

Chrysler Insurance further stated in relevant part as follows:

> Plaintiff does allege that the violation of the FMVRSFA was deliberate and the
> standard business practice of Sonic dealerships.  He further alleges Fraud [*sic*]

8

and conspiracy to misrepresent the documents included in the deal.  **No coverage applies should damages be awarded based on these allegations**.

(*Id.* at PageID 1901.)

On July 21, 2005, following the issuance of the *Galura* class certification order, Chrysler

Insurance sent another reservation of rights letter limiting coverage to that under the Customer

Complaint Endorsement:

> The Court found factually that "Sonic" violated the Florida Deceptive and Unfair Trade Practices Act in the sale of the aftermarket products, namely "Etch."  Based on this finding of fact and the appeal from the Order, DaimlerChrysler Insurance will continue to provide the defense and appeal via your requested counsel, Broad and Cassel, subject to the continuing reservation of rights as issued under date of May 13, 2004, and this letter.  Should a final Order be entered confirming the current finding of the Court, the only coverage that would apply falls under the Customer Complaint Endorsement, limited to $25,000 for any one claim and/or suit.
>
> * * *
>
> Additionally, be advised that DCIC does not waive any rights under the policy for any other departures from the terms, conditions, definitions or the exclusions to coverage that may become applicable.  Rather we specifically reserve our right to dispute and deny coverage to you if and when such are discovered.

(Doc. 147-1 at PageID 5182.)

In a letter dated June 6, 2007, after the appellate court decision affirmed the trial court in

relevant part, Chrysler Insurance denied coverage to Sonic for continued defense and for

indemnification:

> A plain reading of the allegations set forth in the First Amended Complaint [in *Galura*], the trial court's class certification order, and the decision from the Appellate Court compels the conclusion that Sonic's fraudulent misrepresentations and non-disclosures were done intentionally with the full knowledge of and at the direction of the principals of Sonic as a "pattern and practice" of doing business.
>
> * * * *

> Based on the allegations in the Complaint and the decisions of the trial and appellate courts, coverage for this litigation is plainly excluded.  Even if the Customer Complaint coverage would apply, the limits of liability have been exhausted by payment of the legal billings from Broad and Cassel.  **Coverage for the continued defense and any indemnification is denied.**

(Doc. 147-1 at PageID 5185–86 (emphasis in the original).)

Turning to *Owens/Price*, Sonic provided Chrysler Insurance with notice of the *Owens* suit in a letter dated December 1, 2004.  (Doc. 164-1 at PageID 8076.)  Sonic stated that it had retained both the law firm Williams & Connolly and the law firm James, McElroy & Diehl to provide its defense.  (*Id.*)  Following the receipt of the *Owens* complaint, on December 6, 2004, Chrysler Insurance sent a reservation of rights letter agreeing to provide coverage for the suit under the Customer Complaint Endorsement subject to the applicable restrictions.  (Doc. 162-2 at PageID 7276–78.)  Chrysler Insurance also agreed that James, McElroy & Diehl could provide Sonic's defense.  (*Id.*)

Sonic provided Chrysler Insurance with notice of the *Price* suit in a letter dated March 2, 2005.  (Doc. 164-1 at PageID 8080.)  Sonic stated that it had retained both Williams & Connolly and James, McElroy & Diehl to provide its defense.  (*Id.*)  Chrysler Insurance sent a reservation of rights letter to Sonic on March 8, 2005 agreeing to provide coverage for the *Price* suit under the Customer Complaint Endorsement subject to a reservation of rights.  (Doc. 162-2 at PageID 7280–82.)  Chrysler Insurance also agreed that James, McElroy & Diehl could provide Sonic's defense.  (*Id.*)  On March 14, 2005, Sonic sent a letter requesting a new coverage review for *Price.*  (*Id.* at PageID 7283.)

On June 7, 2010, Sonic sent a letter to Chrysler Insurance regarding the *Galura* and the *Owens/Price* actions.  Sonic asserted that Chrysler Insurance had misconstrued the nature of the claims in the actions and had wrongfully denied a defense to the actions.  (Doc. 147-1 at PageID

5237–39.)  Sonic asserted that coverage was appropriate under the TILA Provisions in the Auto

Dealer Enhancement Packages of the Chrysler Insurance Policies for both *Galura* and

*Owens/Price*.  (*Id.*)  Chrysler Insurance responded by asking for current pleadings in the *Galura*

and *Owens/Price* matters, but stated that its prior coverage decisions would stand "[u]nless there

has been a change in the allegations by either the plaintiffs or a Court ruling."  (*Id.* at PageID

5241.)  On July 27, 2010, Chrysler Insurance reiterated its denial of coverage under the TILA

Provisions for *Galura* and *Owens/Price*.  (Doc. 162-2 at PageID 7293–96.)  Chrysler Insurance

asserted that the allegations in the suits did not arise from negligent acts or "errors or omissions"

and that damages were sought in each action pursuant to deceptive trade practices statutes, not

under TILA statutes.  (*Id.* at PageID 7295–96.)

### 2. Great American's Response to the Underlying Suits

Great American received notice about the *Galura* suit on July 7, 2004.  (Doc. 147-1 at

PageID 5212.)  Great American acknowledged receipt of the *Owens* action on December 29,

2004 and of the *Price* action on July 15, 2005.  Great American stated that its policy followed

form to the Chrysler Insurance TILA Provisions coverage, such that it provided coverage if and

only if the Chrysler Insurance Policies provided coverage.  (Doc. 147-1 at PageID 5215–16,

5218–19.)

### D. Procedural History

On October 15, 2010, Sonic filed its Complaint (Doc. 1) against four insurers, Chrysler

Insurance, Great American, Lumbermens Mutual Casualty Company, and Universal

Underwriters Insurance Company.  (*Id.*)  All four Defendants filed Motions to Dismiss, which

the Court denied either in part or in whole.  (Docs. 31, 32, 33, 36, and 49.)  Subsequently, the

Court stayed the claims against Lumbermens Mutual Casualty Company pursuant to an Agreed

11

Order of Rehabilitation ("Rehabilitation Order") issued on July 2, 2012 by the Circuit Court of Cook County, Illinois in *People of the State of Illinois, ex. rel. Boron, Director of Insurance of the State of Illinois v. Lumbermens Mutual Casualty Company*, No. 12CH24227. (Doc. 120-1; Doc. 135.) Also, the Court approved the voluntary dismissal of claims against Universal Underwriters Insurance Company on March 15, 2013. (Doc. 137.)

Sonic has two remaining causes of action against Chrysler Insurance and Great American as stated in the Complaint:

1. Declaratory judgment against both Defendants; and
2. Breach of contract against Chrysler Insurance.

(Doc. 1 at PageID 27–34; Doc. 49 at PageID 2234.)

Chrysler Insurance and Great American have moved for summary judgment as to the claims against them. Sonic has moved for partial summary judgment on multiple issues. First, it seeks summary judgment that the Underlying Suits fall within the TILA Provisions of the Chrysler Insurance Policy, coverage to which Great American follows form. Second, it seeks summary judgment that the Fraudulent Conduct Exclusions of the Chrysler Insurance Policies do not bar coverage. Third, Sonic seeks judgment that Chrysler Insurance's affirmative defense of laches does not bar coverage. Fourth, Sonic seeks summary judgment that Chrysler Insurance is liable to reimburse the defense costs arising from Sonic's retention of Williams & Connolly for the Underlying Suits. (Doc. 147 at PageID 5050–51.)

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).  The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.  "Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law."  *In re Morgeson,* 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

## III.    ANALYSIS

### A.    Choice of Law

"[F]ederal courts sitting in diversity must apply the choice-of-law rules of the forum state."  *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998); *see also Curl v. Greenlee Textron, Inc.*,

404 F. Supp. 2d 1001, 1004 (S.D. Ohio 2005). Ohio has "adopted the Restatement (Second) of Conflict of Laws to govern conflict of law issues." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 834 (N.D. Ohio 2010); *see also Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 341–42, 474 N.E.2d 286 (1984) ("We hereby adopt the theory stated in the Restatement of the Law of Conflicts, as it is more reflective of our past decisions and also provides sufficient guidelines for future litigation."). For a breach of contract action, Ohio courts apply § 188 of the Restatement (Second). *See Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St. 3d 474, 477, 747 N.E.2d 206 (2001). The Restatement states that, in the absence of a choice of law provision in the contract, a court should apply the law of the state which has "the most significant relationship to the transaction and the parties." Restatement (Second) Conflict of Law § 188(1) (1971). Relevant factors include the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the location of the parties. Restatement (Second) Conflict of Law § 188(2). The Court previously recognized that the parties had agreed that North Carolina law would govern Sonic's substantive breach of contract claim. (Doc. 75 at PageID 2428; *see also* Doc. 145 at PageID 4557; Doc. 147 at PageID 5049.)[2]

**B.    Issues**

The first issue the Court must resolve is whether the Chrysler Insurance Policies, specifically the TILA Provisions, provided coverage to Sonic for the *Galura* and the *Owens/Price* suits. This involves two separate inquiries: (1) whether Chrysler Insurance owed

---

[2] Sonic and Great American contend that no material conflict exists between Ohio law and North Carolina law as to the interpretation of an insurance contract. (Doc. 145 at PageID 4557; Doc. 148-10 at PageID 6692.) They now argue that Ohio law, the law of the forum state, should be applied in these circumstances. *See Elkins v. Am. Int'l Special Lines Ins. Co.*, 611 F. Supp. 2d 752, 761 (S.D. Ohio 2009) (stating that the law of the forum state applies where there is no conflict of laws). The Court declines to apply Ohio law in this case, however. Defendants cite case law suggesting that the general principles of contract interpretation are the same in Ohio and North Carolina, but do not address whether each and every other legal principle raised in the parties' briefs is the same in both states.

Sonic a duty to defend in the Underlying Suits, and (2) whether Chrysler Insurance had a duty to indemnify Sonic following the settlement of the two suits. Pursuant to North Carolina law, "the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (1986). The duty to defend ordinarily is measured by the facts alleged in the complaint. *Id.* An insurer is bound to defend when "the pleadings state facts demonstrating that the alleged injury is covered by the policy." *Id.*

Courts begin by comparing side-by-side the language in the policy with the language of the complaint. *See Universal Ins. Co. v. Burton Farms Dev. Co., LLC*, 718 S.E.2d 665, 668 (N.C. App. 2011). The focus should be "on the facts that are pled, not how the claims are characterized." *Holz-Her, U.S., Inc. v. U.S. Fidelity and Guar. Co.*, 539 S.E.2d 348, 350 (N.C. App. 2000). Additionally, the insurer has a duty "investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources" to determine if it has a duty to defend. *Waste Mgmt. of the Carolinas*, 340 S.E.2d at 378. The insurer is not bound to defend when "the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise." *Id.*

Finally, the duty to indemnify ordinarily is measured by the facts determined at trial. *Id.* When the parties to a lawsuit reach a settlement, courts can examine the nature of the claims pleaded in the complaint, the facts pleaded and facts discovered, and the terms of the settlement agreement to determine if there is a duty to indemnify. *See Perdue Farms, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 448 F.3d 252, 262–64 (4th Cir. 2006) (interpreting Maryland law); *St. Paul*

*Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 273–74 (4th Cir. 2004) (interpreting Virginia law).

Sonic, as the insured, has the initial burden to prove that the policy language covered the Underlying Suits. *See Universal Ins. Co. v. Burton Farms Dev. Co., LLC*, 718 S.E.2d 665, 668 (N.C. App. 2011) (stating the insured has the initial burden to establish coverage). Chrysler Insurance has the burden to prove that a policy exclusion barred coverage. *See id.* (stating the insurer has burden to prove exclusions). Ambiguity in the insurance policy is to be resolved in favor of Sonic, the insured. *See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (1970). However, no ambiguity exists unless "the language of the policy is fairly and reasonably susceptible" to more than one meaning. *Id.*

Sonic did not identify any ambiguous word or phrase from the Chrysler Insurance Policy in its briefs. At the oral argument, Sonic's attorney suggested that the term "alleged or actual" in Part I of the Auto Dealer Enhancement Packages, (Doc. 147-1 at PageID 5122), was ambiguous, but he did not identify two separate meanings that the parties had attributed to the phrase. "[A]mbiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Wachovia Bank & Trust Co.*, 172 S.E.2d at 522. The fact that the parties disagreed as to how a policy phrase should be applied to the facts at issue does not render the phrase ambiguous.

### 1.    Chrysler Insurance Duty to Defend

Sonic asserts that Chrysler Insurance had a duty to defend under the TILA Provisions in the Auto Dealer Enhancement Package Endorsements. To review, the TILA Provisions required Chrysler Insurance to defend any suit in which the claimant sought damages for an occurrence

because of an actual or alleged negligent act or error or omission by Sonic and resulting from a violation of any federal, state, or local truth-in-lending statute, statutes that regulate specific disclosures required to complete financing or leasing agreements.  (Doc. 147-1 at PageID 5122.)

The *Galura* and the *Owens/Price* plaintiffs alleged that Sonic's practices involving the Etch product violated truth-in-lending statutes, but they did not assert claims for damages under those statutes.  The *Galura* plaintiffs alleged a single claim for relief pursuant to the FDUTPA.  (Doc. 146-4 at PageID 4774–77.)  They alleged that Sonic's practices were unfair or deceptive under the FDUTPA in part because the practices violated federal TILA and the Florida RISA.  (Doc. 146-4 at PageID 4774, 4776.)  The Florida RISA statute requires specific disclosures in retail installment contracts, *see* Fla. Stat. 520.07, so it qualifies as a truth-in-lending statute under the Chrysler Insurance Policies.  The *Owens/Price* plaintiffs sought damages pursuant to the S.C. Dealers Act, the N.C. UDTPA, and state common law claims.  (Doc. 146-5 at PageID 4797–02.)  They specifically argued at summary judgment that Sonic violated TILA and that the TILA violation could serve as the predicate unfair or deceptive act constituting a violation of the N.C. UDTPA.  (Doc. 147-3 at PageID 5661–63.)  Nonetheless, the focus of the Underlying Suits was on deceptive and unlawful practices, not on purported violations of federal or state statutes that regulate disclosures required to complete consumer financing or leasing agreements.  The *Galura* and *Owens/Price* plaintiffs sought to certify classes of all customers who purchased or leased a vehicle with the Etch product, regardless of whether the customers executed financing or leasing agreements with Sonic to do so.  (Doc. 146-4 at PageID 4769; Doc. 146-5 at PageID 4795.)

The case of *TIG Insurance v. Joe Rizza Lincoln-Mercury, Inc.*, No. 00 C 5182, 2002 WL 406982 (N.D. Ill. Mar. 14, 2002), is instructive.  In *TIG Insurance*, an insured car dealership

sought coverage from its insurer for five underlying lawsuits. The insurance policy provided that the insurer would pay all sums the insured dealership was legally required to pay as damages solely by operation of TILA because of an error or omission in failing to comply with TILA. *Id.* at *2, 8. In the first claim of each of the underlying suits in *TIG Insurance*, the claimants sought damages from the dealership for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, but within the first claim the claimants also alleged that the dealership violated federal TILA. *Id.* at *9. The claimants in only one of the underlying suits specifically sought damages for the TILA violation. *Id.* The court held that the other four underlying suits were "plainly not covered" by the insurance policy because the claimants sought damages under the Illinois consumer fraud statute in those suits, and not under TILA. *Id.*; *see also Heritage Mut. Ins. Co. v. Ricart Ford, Inc.*, 105 Ohio App. 3d 261, 267–68, 663 N.E.2d 1009 (Ohio App. 1995) (finding no coverage under TILA insurance provision where underlying complaint alleged TILA violations, but did not seek damages under relevant TILA statutory provision). Applying the *TIG Insurance* analysis to this case, Sonic would not have coverage under the TILA Provisions in the Chrysler Insurance Policies because the *Galura* plaintiffs sought damages under the FDUTPA and the *Owens/Price* plaintiffs sought damages under the N.C. UDTPA and the S.C. Dealers Act.

However, even if the Court were to determine that the plaintiffs in the Underlying Suits sought damages for truth-in-lending statute violations, Defendants argue that Chrysler Insurance nonetheless had no duty to defend because the plaintiffs alleged only intentional misconduct by Sonic. The TILA Provisions provided coverage for only "an alleged or actual negligent act or 'error or omission.'" (Doc. 147-1 at PageID 5122.) The Policies defined "errors and omissions" as "a mistake, oversight, miscalculation or clerical error, which occurs as an unintentional

18

exception to the standard practice or procedure of the insured." (*Id.* at PageID 5123.) The Court agrees with Chrysler Insurance and Great American that the *Galura* and *Owens/Price* plaintiffs alleged intentional misconduct by Sonic.

The *Galura* plaintiffs alleged that Sonic "engaged in a policy to withhold the actual [Etch] price . . . by designing and operating a computer system that omitted these terms from customer contracts." (Doc. 146-4 at PageID 4763.) They alleged that Sonic had a "practice and policy to charge whatever price for [Etch] it [could] to the customer to swell the monthly payment up." (*Id.* at PageID 4775.) They further alleged that Sonic's violations of the FDUTPA "were willful and intentional because the non-disclosures resulted from an established policy to avoid alerting customers of the actual price charged . . . by use of a computer program designed to omit the printing of the purchase price on contract documents." (*Id.* at PageID 4775–76.) The *Galura* courts also understood the plaintiffs to be alleging intentional conduct. The trial court stated in the class certification order that the plaintiffs had alleged that Sonic "orchestrated a scheme to deceive consumers" and engaged in a "pattern and practice of doing business" that violated the FDUTPA. (Doc. 148-7 at PageID 6446–47.) The appeals courts similarly stated that the plaintiffs had alleged that Sonic "orchestrated a scheme to 'stuff' or 'pack' Etch into vehicle sales transactions without proper disclosure to customers." (*Id.* at PageID 6472.)

Sonic does not identify allegations of negligent misconduct or errors or omissions made against it in the *Galura* pleadings. Rather, Sonic points only to deposition questions asked to Richard O'Connor, Sonic's finance and insurance manager, during *Galura* discovery. (Doc. 147 at 5055–56.) Mr. O'Connor was questioned about Sonic's procedures for disclosing the price of Etch and whether those procedures were followed. (Doc. 162-3 at PageID 7501–04.) The deposition excerpts are limited and do not provide context for the questions asked. The Court

19

does not read the deposition excerpts to imply that the *Galura* plaintiffs alleged that Sonic failed to disclose the price of Etch as the result of a mistake, oversight, or clerical error.

As to purported allegations of negligence in *Owens/Price*, Sonic points out that intent need not be proven to establish a violation of the N.C. UDTPA. *Excel Staffing Serv., Inc. v. H.P. Reidsville, Inc.*, 616 S.E.2d 349, 355 (N.C. App. 2005). Regardless, the plaintiffs alleged only intentional acts by Sonic in the Amended Class Arbitration Demand. The *Owens/Price* plaintiffs accused Sonic of having a "uniform classwide practice" of packing the Etch product at "exorbitant prices." (Doc. 146-5 at PageID 4780.) They alleged that "Sonic dealerships marketed and sold aftermarket products including Etch . . . as part of an overall integrated marketing and sales program." (*Id.* at PageID 4784.) They further alleged that Sonic "engaged in a uniform corporate policy of including the Etch product as a non-optional aftermarket product in sales and lease agreements." (*Id.* at PageID 4791.) Finally, they alleged that Sonic acted "in bad faith" and engaged in "uniform deceptive and unlawful" practices. (*Id.* at PageID 4798–99.)

In the motion for class certification, the *Owens/Price* plaintiffs argued that Sonic employees were ignorant about Etch issues such that "the left hand did not know what the right hand was doing." (Doc. 162-3 at PageID 7695.) Those particular allegations, however, concerned Sonic's defense that it had made comprehensive reforms to its sales practices. (*Id.* at PageID 7694–97.) Elsewhere in the same brief, the plaintiffs clearly argued that Sonic had policies that "incentivized front line employees to pack and stuff [Etch] deals with the product whenever possible" and that Sonic had "direct control over the manner in which dealerships sold . . . Etch to customers and was well aware of the use of improper sales practices." (*Id.* at PageID 7685–86.) These are not allegations that Sonic engaged in negligent acts or committed errors or omissions.

Sonic contends that Chrysler Insurance owed it a duty to defend despite the sparseness of allegations in the Underlying Suits asserting that plaintiffs sought damages arising from Sonic's negligent act or error or omission. Sonic cites *Mid-Century Insurance Co. v. Vinci Investment Co., Inc.*, No. G040815, 2010 WL 673267 (Cal. App. Mar. 23, 2010) and *Automax Hyundai South, L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 805 (10th Cir. 2013), for the proposition that allegations of intentional misconduct by an insured are not fatal to coverage under a truth-in-lending insurance policy provision. The insurance policy in *Mid-Century* provided coverage to Vinci, the insured, against liability for damages involving negligent truth-in-lending violations. 2010 WL 673267, at *1. Vinci was sued by a credit union for committing an unfair business practice in violation of 18 U.S.C. § 1344 which prohibits defrauding or obtaining money from a financial institution by means of false or fraudulent pretenses, representations, or promises. *Id.* at *2. The credit union stated in response to interrogatories that Vinci had violated a truth-in-lending statute. *Id.* at *3, 9.

The court in the insurance coverage case found that the insurer had a duty to defend Vinci against the credit union's claim based on the TILA policy provision. *Id.* at *12–13. The court stated that an insurer could not avoid a duty to defend when there was a dispute of fact whether the conduct of the insured had been intentional and excluded from coverage under the TILA provisions, or negligent and covered under the TILA provisions. *Id.* at *3 n.5, *12–13. "Because the truth in lending liability insurance clause potentially covered some of the credit union's claims against Vinci [the insured], Mid-Century [the insurer] owed Vinci a defense." *Id.* at *13; *see also Automax*, 720 F.3d at 805 (stating that "an insurer has a duty to defend even when the facts alleged intentional misconduct because at trial the jury could have found the defendant guilty merely of negligence"). Sonic argues that Chrysler Insurance also had a duty to

defend pursuant to the TILA Provisions in the Chrysler Insurance Policies because the *Galura* and *Owens/Price* plaintiffs alleged that Sonic violated TILA and such allegations could be established by negligent conduct.

The Court does not agree.  *Mid-Century* and *Automax* are distinguishable.  In *Mid-Century*, the court noted that the insurer did not argue that all of the insured's violations were intentional.  *Id.* at \*3 n.5 ("[The insurer] does not argue on appeal that all of Vinci's violations were intentional, nor does it dispute that the credit union's 'claim arose out of an 'occurrence,'' defined in the policy as an 'unintended' event.").  Here, Chrysler Insurance and Great American contend, and the Court has found, that the *Galura* or *Owens/Price* plaintiffs did not assert claims based on negligent conduct or errors or omissions.  Rather, as demonstrated above, the plaintiffs alleged that Sonic engaged in intentional misconduct.

In *Automax*, the plaintiffs in the underlying suit had sought to impose liability upon an insured car dealership for three types of behavior: (1) the sale of a used car as new; (2) the sale of a car with undisclosed damage, and (3) the terms and manner of financing.  720 F.3d at 805.  The insurance policy in *Automax* provided coverage for "accidents," which included negligent conduct which produced an unexpected result, and for non-intentional violations of TILA.  *Id.* at 801, 804.  Automax asserted that the claim based on the sale of a car with undisclosed damage could constitute a covered accident under the insurance policy.  The underlying facts indicated, and the insurer was aware, that Automax may not have known that the car was damaged at the time of sale.  *Id.* at 805.  In fact, the trial jury was instructed on claims for ordinary and per se negligence as well on claims for fraud and violations of TILA.  720 F.3d at 803.  Again, however, the facts in the underlying suits against Sonic are different.   Neither *Galura* nor *Owens/Price* included express allegations against Sonic based on negligent conduct or errors or

omissions. Sonic cannot obtain coverage based on a theory that the plaintiffs in the Underlying Suits could have alleged claims based on negligent conduct when, in fact, plaintiffs alleged only intentional misconduct by Sonic. *See Normark Corp. v. Hartford Acc. and Indemn. Co.*, No. C8-91-890, 1991 WL 222447, at *1 (Minn. App. Nov. 5, 1991) (stating that it is "immaterial" that the underlying plaintiff "could have alleged claims that might have invoked coverage" because the insurer's "duty to defend is limited to the claims actually made" against the insured).

The Court concludes that Chrysler Insurance did not have a duty to defend Sonic in the *Galura* or the *Owens/Price* actions because in neither suit did the plaintiffs seek damages arising from an occurrence because of an alleged or actual negligent act or error or omission and resulting from the civil violation of a federal, state, or local statute that regulates the disclosures required to complete consumer financing or lease agreements.[3]

### 2. Chrysler Insurance Duty to Indemnify

The Court next must determine whether Chrysler Insurance had a duty to indemnify Sonic for the sums it agreed to pay in settlement of the *Galura* and *Owens/Price* suits. The court can consider the nature of the claims pleaded in the complaint, the facts pleaded and facts discovered, and the terms of the settlement agreement to determine if there is a duty to

---

[3] Sonic cites a variety of extrinsic evidentiary materials to support its coverage positions. For example, Sonic cites to deposition testimony to support its argument that Chrysler Insurance purposefully used broad policy language, rather than restrictive language, in its TILA Provisions. (Doc. 147 at PageID 5068.) Similarly, Sonic cites deposition testimony to argue that "it was not the [Chrysler Insurance] underwriting department's understanding that Chrysler Insurance's TILA Provisions applied only to causes of action brought under specific TILA statutes." (Doc. 164 at PageID 7937.) Finally, Sonic cites deposition testimony for the proposition that Chrysler Insurance witnesses understood that mere allegations of fraud were insufficient to trigger the Fraudulent Conduct Exclusions. (Doc. 147 at PageID 5077.) The Court has not relied on any of this extrinsic evidence in making its coverage determinations. North Carolina law does not allow the terms of a written contract to be contradicted by extrinsic evidence. *See QBE Specialty Ins. Co. v. FSI, Inc.*, No. 3:09cv435, 2011 WL 1655591, at *2 (W.D. N.C. May 2, 2011) (citing *Root v. Allstate Ins. Co.*, 272 N.C. 580, 587, 158 S.E.2d 829 (1968)). Extrinsic evidence can be used to determine the intent of the parties, but only when a contractual term is ambiguous. *Root*, 158 S.E.2d at 835. Sonic has not identified any ambiguous contract phrases for which extrinsic evidence is necessary.

Relatedly, the Court will not rely on an employee's understanding of provisions in the Chrysler Insurance Policies to create or expand coverage beyond the terms of the contract. Estoppel cannot not be used to broaden the coverage of an insurance policy. *Netherlands Ins. Co. v. Cockman*, 342 F. Supp. 2d 396, 408 (M.D. N.C. 2004).

indemnify. *See Perdue Farms, Inc.*, 448 F.3d at 262–64; *St. Paul Fire & Marine Ins. Co.*, 365 F.3d 273–74.

Sonic relies on the recital language within the settlement agreements to support its contention that the Chrysler Insurance has a duty to indemnify it. The *Galura* parties stated in the recitals to their settlement agreement that the plaintiffs had alleged that Sonic violated Florida RISA and federal TILA. (Doc. 162-3 at PageID 7760.) Similarly, the *Owens/Price* parties stated in the recitals to their settlement agreement that the plaintiffs had alleged a TILA claim. (*Id.* at PageID 7792.) Sonic argues on the basis of this recital language that the settlement agreements obligated it to pay damages for TILA violations and that Chrysler Insurance was obligated by the TILA Provisions to indemnify Sonic.

The recital language standing alone is not sufficient to establish that Chrysler Insurance had a duty to indemnify.[4] The TILA Provisions in the Chrysler Insurance Policies only obligated Chrysler Insurance to indemnify Sonic for damages resulting from a violation of a truth-in-lending statute *and* "arising from an 'occurrence' because of an alleged or actual negligent act or 'error or omission.'" (Doc. 147-1 at PageID 5122 (emphasis added).) The settlement agreement recitals relied upon by Sonic do not suggest or establish that Sonic was paying settlement damages "arising from an 'occurrence' because of an alleged or actual negligent act or 'error or omission.'" (*Id.*) Moreover, as discussed in the preceding analysis of the duty to defend, the *Galura* and *Owens/Price* plaintiffs plainly alleged in their pleadings that Sonic engaged in an

---

[4]  The TILA language in the settlement agreement recitals was undercut somewhat by the settlement class definitions. The settlement classes were not limited to customers who purchased or leased their vehicles pursuant to financing agreements with Sonic. (Doc. 162-3 at PageID 7762, 7785–86.) Instead, the settlement classes were broad enough to include customers who purchased or leased vehicle with cash or using third-party financing. As such, Sonic was not obligated under the settlement agreements to pay damages resulting from a violation of truth-in-lending statutes as to at least those settlement class members. The Court finds that Chrysler Insurance had no duty to indemnify Sonic for reasons stated in the text above. Even if Chrysler Insurance had a duty to indemnify, Sonic would have the burden to apportion the settlement between the covered and noncovered settlement amounts paid. *See Perdue Farms*, 448 F.3d at 263.

intentional scheme to pack or stuff Etch into vehicle sales and leases.  The Court concludes that Chrysler Insurance did not have a duty to indemnify Sonic for the sums paid in settlement of the *Galura* and *Owens/Price* suits.

3.    **Duty of Great American to Defend or Indemnify**

Sonic concedes that the Great American Policy followed form to the Chrysler Insurance Policies.  (Doc. 163-1 at PageID 7906.)  The Court held above that Chrysler Insurance had no duty to defend or indemnify Sonic as to the Underlying Suits.  Accordingly, Great American had no duty to defend or indemnify Sonic for the Underlying Suits.

4.    **Additional Issues**

The parties addressed a host of other issues in their briefs including the trigger of coverage date, a putative laches defense, the applicability of the Fraudulent Conduct Exclusions from the Chrysler Insurance Policies, and whether Sonic was entitled to seek attorney fees from the firm of Williams & Connolly as part of its defense costs.  The Court need not adjudicate these issues based on its conclusions that neither Chrysler Insurance nor Great American owed Sonic a duty to defend or a duty to indemnify.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff Sonic Automotive, Inc.'s Motion for Partial Summary Judgment (Doc. 147) is **DENIED**, Defendant Great American Assurance Company's Motion for Summary Judgment (Doc. 145) is **GRANTED**, and Defendant Chrysler Insurance Company's Motion for Summary Judgment (Doc. 148) is **GRANTED**.

IT IS SO ORDERED.


S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court